H. R. WELBORN v. F. W. SECHRIST and others.

*Contract of Purchase—Specific Performance.*

In an action for specific performance of a contract for the purchase of land, it is no defence in the vendor to say that he has disabled himself to comply with the same: the vendee is entitled to judgment that the vendor make reasonable efforts to reacquire the title and convey to him.

(*Green* v. *R. R. Co.*, 77 N. C., 95; *Love* v. *Camp*, 6 Ired. Eq., 209; *Swepson* v. *Johnson*, 84 N. C., 449; *Bryson* v. *Peak*, 8 Ired. Eq., 310, cited and approved).

CIVIL ACTION tried at Spring Term, 1882, of GUILFORD Superior Court, before *Graves*, J.

The defendant, F. W. Sechrist, owning a tract of land containing about twenty-one acres, at a sale under execution against

his father, the defendant, Reuben F. Sechrist, made in September, 1879, and conveyed to him by the sheriff of Guilford in the month of August of the year following, entered into a written agreement in these words:

"HIGH POINT, N. C., August 9th, 1880.

Received of H. R. Welborn two dollars, to bind a trade between said Welborn and F. W. Sechrist. I bind myself to make said Welborn a deed to a lot of land 200 feet front and 200 feet back, lying on Jamestown street, adjoining J. B. Richardson on the west and fronting on Jamestown street. I bind myself to make a deed to said lot when said Welborn pays me ninety-eight dollars more.

(Signed)          F. W. SECHRIST.
Witness, J. S. Campbell."

When the survey and marking off the lot mentioned in the contract were about to be made, on the next day, in order to the execution of the deed therefor, the vendor stated that his mother, (the defendant, Nancy,) objected to his selling, because the lot was part of the garden, and he wanted the lines so run as to have less front on the street, and with greater depth, so that the area should be the same, and the plaintiff assenting thereto, the survey made gave a front of 169 feet and a depth of 236 feet. While the deed conforming to the survey and change of boundary was being prepared, and in the absence of the plaintiff, who had gone to get the residue of the purchase money, the vendor laid down the amount he had received and declared his purpose not to sign the deed. On the plaintiff's return, and learning what had occurred, he took the deed, presented it for execution, and tendered the sum ($98) yet due. The vendor refused, remarking that his mother was unwilling to sell the lot, unless the entire tract, of which it was part, could also be sold.

The defendants concur in stating in their answers that the vendor bid off the land as agent for his mother, and paid the

purchase money with funds furnished by her out of her separate estate, and that through inadvertence the title was made to him instead of to her, and that this fact was known to the plaintiff at the time of making the contract, and that the vendor had conveyed the land to her as in equity he was bound to do.

This is the substance of the defence to the action of the plaintiff for a specific enforcement of the contract and a conveyance of the land to him.

Upon the trial, the plaintiff, examined on his own behalf, testified that when he purchased the lot, he had no knowledge, nor had ever, of any claim of the said Nancy to the land, or that she had any separate estate, until a few days after, when he learned of the making of the deed to her.

The plaintiff also produced in evidence a mortgage deed for the whole tract made by the vendor to one Bryant, to secure money borrowed of him, which had been satisfied, and a deed from the same to one W. H. Miller for a lot taken from the tract.

The deed tendered described the lot by its changed boundaries, but the complaint demands performance of the written contract as the lot is therein described.

Upon an intimation from the court that taking all that had been shown by the plaintiff to be true, he could not maintain his action, he submitted to a nonsuit and appealed.

*Messrs. Scott & Caldwell,* for plaintiff.
*Messrs. J. N. Staples* and *Hinsdale & Devereux,* for defendants.

SMITH, C. J., after stating the facts. We are at a loss to understand upon what ground His Honor ruled that no relief could be obtained, and we infer from the course of argument on the appeal that it was in consequence of the variation ·by parol of the form and boundaries of the lot, as defined in the written contract. In this view we do not concur. If the vendor, waiving the statute of frauds, had consented to abide by the modified
37

contract and carry it into execution, the plaintiff would be compelled to accept such performance, because the statute is only available to the party to be charged, and the plaintiff cannot make the objection. This is held in *Green* v. *N. C. R. R. Co.*, 77 N. C., 95.

As, however, the vendor and his associate defendants repudiate the entire contract and deny the plaintiff's right to any conveyance by either boundary, the attempted verbal modification becomes inoperative as against the vendor, and the plaintiff is remitted to his right to claim under the written agreement and according to its terms.

If in truth the defendant, Nancy, did supply the funds to pay for the land, and her son acted in the purchase as her agent and on her behalf, she would have an equity equal if not paramount to that of the plaintiff, and having acquired the legal title could retain the estate, upon the principle that where the conflicting equities are equal the possession of the legal title shall control.

It does not appear, however, that any proof was offered of the alleged prior equity in the mother; and if it did so appear, it must be disregarded, since the ruling is predicated upon the assumed truth of the facts shown by the appellant, and so must be our revision of the correctness of the ruling. There is evidence tending to show that the defendant, Nancy, had entrusted the disposition of the property, if she had any equitable claim thereto, to her son; and knew, without making known any dissent, of the negotiations between the parties that resulted in the making of the contract; or it is at least inferable from the facts that her alleged agent had made two other conveyances, the one, of the whole land as a security for borrowed money, the other, absolute as to a part of it; that her objections were at first to the form of the lot, as interfering with the garden, and then because a portion and not the whole tract had been sold; that the husband, the former owner, when applied to by the plaintiff to buy, referred him to the son, and that the plaintiff visited the house

openly and the son went out with him to look at the premises, seemingly with their knowledge.

Assuming that the conclusion be reached that the contract was entered into with the knowledge and assent of the other defendants, the question arises, can the parties, by such an arrangement transferring the estate from the vendor to his mother, the *feme* defendant, evade and defeat the jurisdiction of the court in the exercise of a clear power to enforce compliance with the contract, or is this authority paralyzed by a resort to this simple contrivance which puts an estate in the wife, to which she has no just claim, in fraud of the rights of others?

There is some difficulty in making a satisfactory solution of the inquiry, existing in the fact that a deed from a married woman must, to convey her estate in land, be the offspring of her own volition, and this must appear in a private examination made by competent authority.

We have not been able to find any adjudication upon the point. It would seem there ought to be some relief against the consequences of such a transaction, by which the equitable estate created by the contract is taken from the vendee and he deprived of his right to have the same. But the kind and measure of relief to be afforded by an application to the equitable jurisdiction of the court, are not necessarily presented in the present case, and we forbear to express an opinion upon the point until it shall directly arise and require a determination. It is sufficient now to say, that the plaintiff has a right to a judgment against the vendor, which shall compel him to make sufficient efforts to undo what he has done, and reacquire, so that he can convey the title in the lot sold to the plaintiff; and it is no defence to the action for him to say he has disabled himself to comply with his contract.

In *Love* v. *Camp*, 6 Ired. Eq., 209, PEARSON, J., uses this language: "If the vendee does not know that the vendor has not the title, there is then no reason why he should not be decreed to perform his agreement, and if he is put to great inconvenience

and expense to enable him to obey the decree, it will be the consequence of his own act, and he will not be allowed to offer such an excuse for not doing justice."

"It is a defence that the vendor is unable to convey the title, for want of it in himself, after reasonable efforts to obtain it." *Swepson* v. *Johnson*, 84 N. C., 449; Fry on Spec. Perf., § 658; Pom. Cont., § 203.

The rule prevails when the vendor, after making his contract, sells to a *bona fide* purchaser without notice. *Swepson* v. *Johnson, supra; Denton* v. *Stewart*, 1 Cox, 258.

If the conveyance after contract were made to one cognizant of its existence and provisions, and a person, *sui juris*, the reconveyance can be coerced from the purchaser. *Lanety* v. *Mason*, 33 N. Y., 658; *Foss* v. *Haynes*, 31 Maine, 81.

The party is not by such means thrown back upon his action for compensatory damages for a breach of the obligation, but he has a remedy in its specific enforcement.

"While on the one hand," remarks PEARSON, J., "the vendee is not obliged to take compensation in damages, but may insist on having the thing contracted for, so on the other, the vendor is not obliged to make compensation in damages, but may insist on the vendee's taking the thing contracted for." *Bryson* v. *Peak*, 8 Ired. Eq., 310.

We do not undertake to pass upon the plaintiff's remedy against the *feme* defendant, and in what form, if there be any, in case of her refusal to make title, it is to be given; but we simply decide against the ruling that the plaintiff cannot maintain his action at all, in deference to which the nonsuit was suffered. If the facts be as supposed, he has a right to require of the vendor a reasonable effort to reacquire title, though at much expense, and thus put himself in condition to comply with his engagement; and he may have redress in some form against the other defendants if they have participated in the vendor's endeavor to rid himself of his obligation to convey, in fraud of the vendee's right to compel performance, by depositing the title

in a married woman; but we will not undertake to declare or define the extent and kind of such redress as may be open. Possibly upon the next trial the point may not arise.

There is error, and the nonsuit must be set aside and a new trial awarded, and it is so adjudged. Let this be certified.

Error.                                                 *Venire de novo.*