WILLIAM P. LOVE *v.* JAMES S. COBB, A. R. HOMESLEY and
EZEKIEL PRICE.

Where a part of the consideration for a contract to sell land made in March
1865, was a sum in Confederate currency, which was not paid, and before
the contract was completed, that currency had become worthless, *Held,*
that the purchaser was not entitled to a decree for specific performance.

Where one bargains for land of another who (as he knows,) has only an
equitable title, *Held,* upon the latter being unable to procure a title, by
the refusal of *his* bargainor, that he is not bound to a specific performance
of his contract.

Specific performance will not be decreed, where, in the nature of things,
the only effect of the decree will be to imprison the defendant perpetually.

The right of a plaintiff to relief must always be limited by his own statements
in the pleadings of his grounds for complaint.

Where there is a valid contract for the sale of land betwixt A and B, as
principals, *Held,* that C cannot be substituted to the rights or duties of
either party without an agreement *in writing.*

BILL in equity, set for hearing upon the pleadings and proofs,
and transferred from the Fall Term 1868, of the Superior
Court of CLEAVELAND.

The plaintiff alleged that in March 1865, he had agreed with
the defendant Cobb to exchange with him certain lots in the
town of Shelby, the plaintiff agreeing to pay for the difference
in value, on the 1st of May ensuing, six thousand dollars in
Confederate money; that the evidence of the agreement for an
exchange, was a bond signed by himself and Cobb, specifying
the lots. These were all set forth. He also alleged that on
the 1st of May, as agreed upon, he had prepared mutual deeds
for himself and Cobb, and tendered to the latter the $6,000 in
Confederate money, and offered to comply with his bargain,—
and thereupon Cobb informed him that he had only a bond for
title from the defendant Homesley; that some days afterwards,
upon his mentioning the matter to Cobb again, the latter said
that Confederate money was worthless, and he could not take
it; and thereupon the plaintiff offered to pay him what it was
worth in currency at the time of the contract; that Cobb has

failed to comply with his contract, and now pretends that he was acting as agent for Homesley; which is not true, as he then had a bond for title from Homesley to the lot which he bargained to the plaintiff, but has since destroyed it; and that, even if it were true, Homesley has ratified the contract by Cobb, inasmuch as he surrendered to the plaintiff possession of the lot bargained by Cobb, and took possession of those received by Cobb in exchange, and has since resided upon them, and improved the houses, and offered to sell them.

The plaintiff also alleged that the defendant Price has recently purchased from the other defendants the lot in controversy, but that he did this with notice of the plaintiff's claims.

The prayer was for a specific performance of the contract, and for general relief.

The defendants Homesley and Price, filed a joint answer denying that Cobb ever had any title to the lot bargained to the plaintiff, and averring that Cobb was a *special agent* of Homesley's to sell it, and had exceeded his powers in the particular bargain made.

The separate answer of Cobb, was to the same general effect.

Evidence was taken, but the points upon which the case went off, render it unnecessary to state it.

*Bragg*, for the plaintiff.

1. If, as is agreed, Cobb were Homesley's agent, the latter is bound by the agreement of Cobb, even, though the name of the latter alone appear in the written contract. *Oliver* v. *Dix*, 1 D. & B., Eq. 158; *Phillips* v. *Hooker*, Phil. Eq. 193, 2 Par. Cont. 291, Story Ag. ss. 244, 445; *Freeman* v. *Loder*, 11 Ad. and El. 589.

2. Such an agency may be by parol, *Blacknall* v. *Parrish*, 6 Ire. Eq. 70.

3. It may be created by a parol ratification; even by slight

acts.  *Oliver.* v.  *Dix,* (above), Parsons and Story (above),. Paley, Ag. 171, &c., and 324, 5.

4. As Cobb did not disclose his agency, he at least is bound by the contract, and must perform in specie.  *Love* v. *Camp,* 6 Ire. Eq. 209;  *Jones* v.  *Garland,* 2 Jon. Eq. 502;  *Forney* v.. *Shipp,* 4 Jon. 527.

*Phillips & Merrimon, contra.* ·

If Cobb made the contract *for himself,* as the bill expressly charges, then, whatever be the law in cases of concealed agency, Homesley cannot be rendered liable on such contract. by any intervention not in writing.  *Wilson* v.  *Tumman,* 6. Man. and Gra. 236, (46 E. C. L.)

READE, J.  I. The plaintiff cannot have a specific performance by defendant Cobb, for the reasons, (1) that Cobb had not the legal title at the time of the contract, nor has he it now,. nor can he get it, because the defendant Homesly has it, and refuses to make it to Cobb.  And the fact that Cobb had neither the title nor the possession, was known to the plaintiff,. and he made the contract in full view of the fact, and, of course, he knew that he was taking the chances of Cobb's being able to get the title from Homesly.  It is all the same,. so far as this case is concerned, as if Cobb had said, in so. many words, " I will make you the title, *provided* I can get it. from Homesly. "  And if he chose to deal under such circumstances, he must be left to his remedy at law.  (2) It must be supposed to have been in the contemplation of the parties,. when they made the exchange of lots, and the plaintiff gave his bond to Cobb for $6000 as the difference in the value of the lots, that the plaintiff was to pay *some value;* but by reason of. an unforeseen event, the result of the war, the funds in which the difference in value was to be paid, Confederate Treasury notes, were worthless.  To decree a specific performance would, therefore, work manifest injustice to the defendant. Cobb.  It is true that the plaintiff offered to pay Cobb what. the Confederate notes were worth at the time of the contract;.

which would answer the ends of justice; yet that would not be *the* contract which he is seeking to have *specifically* performed. And, (3) if a specific performance were decreed, it might amount to the perpetual imprisonment of Cobb, upon his failure to make title,—for he has not the title; or, at least, it would put him in the power of Homesly to demand an unreasonable price for title. It would be otherwise, if the Court could see that it was quite within the power of Cobb to get the title upon fair terms. Nor would it avail the plaintiff anything, to have a decree against Cobb for title with covenants of warranty of title, so as to give the plaintiff remedy at law upon the warranty, for he has the like remedy now upon the contract, if it be valid,

II. The plaintiff is not entitled to a decree for specific performance against the defendant Homesly, because his contract was not with Homesly, but with Cobb. The bill states that the contract was with Cobb as principal, and that the pretence of his agency for Homesly is untrue. It is true that Cobb in discharge of himself, states in answer, that he was the agent of Homesly; and if the bill had been framed, or amended after the answer, to meet that view, the question might be considered; but both the plaintiff and Homesly deny the agency, and the plaintiff cannot, even under the general prayer, have relief contrary to the express allegations and general scope of the bill. It is true that the amended bill *argues* that if it were true that Cobb was the agent of Homesly, and the contract in its inception was imperfect under the statute of frauds, yet the defendant Homesly ratified and confirmed the contract after it was made, and is obliged to perform it. We cannot allow the plaintiff the advantages of an argument against the facts, as he alleges them to be. But considering the case as if it were properly charged, then the acts relied on to make out a ratification and confirmation of the contract on the part of Homesly, are (1) that he took possession of the lots which Cobb got from the plaintiff, and repaired them; and (2) contracted to sell them; and (3) took from Cobb the $6,000 bond, which was given as the difference in the prices. It is a

plain proposition, that unless the contract *purported* to be Homesly's, it could not be ratified or confirmed as his. If the contract was Cobb's, then, however ratified and confirmed, it was ratified and confirmed as Cobb's. Homesly might have adopted, as his own, the terms of contract which was Cobb's, and then he would have been bound by it. But it is to be noted that, under the statute of frauds, a note or memorandum in writing, signed by the party to be bound, or his agent, is necessary to the validity of a contract for the sale of land. If, therefore, the contract as made, was not Homesly's, and it be put upon the ground that he subsequently *adopted* it as his, then the *adoption* must be by the same solemnities as were required for the original contract, for to him it is original.

If, therefore, the contract as made was Cobb's, in order to make it Homesly's by adoption, the adoption must be by some note or memorandum in writing; else it would be, that a man might do by the instrumentality of another, what he could not do himself. It would be different if the contract *purported* to be Homesly's; for, in that case, although made without his authority, he might ratify and confirm it, and that might be proved by parol. But to set up a contract in writing, purporting to be the contract of A, by parol evidence that it was not the contract of A, but was the contract of B, would be liable to the two-fold objection, (1) that it violates the stat" و of frauds, and (2) contradicts writing, by parol.

There will be a decree dismissing the bills without costs.

PER CURIAM.                                    Bill dismissed.