G. W. SWEPSON and others *v.* McKEAN JOHNSTON.

*Specific Performance—Contract to convey land.*

In an action to enforce the specific performance of a contract to convey land, the inability of the vendor to convey the title for want of it in himself after reasonable efforts to obtain it, is a good defence.

(*Love* v. *Camp*, 6 Ired. Eq., 209; *Taylor* v. *Kelly*, 3 Jones Eq., 240; *Sugg* v. *Stowe*, 5 Jones Eq., 126; *Love* v. *Cobb*, 63 N. C., 324, cited and approved.)

CIVIL ACTION to enforce specific performance of a contract to convey land, tried at June Special Term, 1880, of HENDERSON Superior Court, before *Schenck, J.*

Defendant appealed from the judgement below.

*Messrs. J. H. Merrimon* and *T. F. Davidson,* for plaintiffs.
No counsel for defendant.

SMITH, C. J.   On February 3rd, 1865, the defendant entered into a covenant with the plaintiffs to convey to them within twelve months the legal title, free from incumbrances, "to thirteen hundred and seventy acres of land, comprising eleven different tracts, situate, lying and being in Transylvania county, in the State of North Carolina, on the waters of French Broad, and being the lands upon which the said Johnston has recently resided," and at once to put them in possession.   The action begun on October 27th, 1868, has for its object the enforcement of the specific performance of this obligation.

The defendant, brought in by publication, in his answer denies that he has title to one thousand seventy-three acres of the land which had been conveyed by one E. Clayton to Thomas L. Webb, trustee, in a deed of marriage settlement for the separate use of the defendant's wife and the use of their children ; but admits his ownership of two hundred and ninety-seven acres, adjacent to the large tract, and alleges that these matters were fully explained to the plaintiffs at the time of making the contract.   In explanation of his failure to carry it into effect, he states that when the agreement to sell was made in October, 1864, and before the title bond set out in the complaint was executed, he expected to procure the assent of the trustee to the proposed conveyance, and that this was afterwards withheld because during the interval of delay in payment, a tract of land, for the purchase of which negotiations were then in progress, owing to the depreciation of confederate currency, was withdrawn from market, and the money could not be re-invested for the benefit of the trust estate.

At fall term, 1870, the plaintiffs filed a supplemental bill, accepting the defendant's admission of the ownership of the

smaller tract, the boundaries of which they do not know and call upon him to define, and demand that he make them title thereto, and also to his contingent equitable life estate in a share of the larger tract, which they insist passes to him under the Clayton deed; and these they offer to accept in fulfilment of the stipulations of the contract.

In response to the supplemental complaint, the defendant says that he has the legal title to one hundred and twenty-one acres only, consisting of two tracts, the one conveyed by one McJenkin to him by deed, of which he annexes a copy, the other known as the "Wilson tract" containing one hundred and eighty-three acres, one undivided third of which he owns, and the remainder he bought at a sale under a decree of the court of equity for five hundred dollars, no part of which has he paid or secured, nor has he any certificate of purchase from the clerk and master, though he has since been in possession paying to the life-tenant of the land the annual interest on the purchase money.

The defendant further states that in 1853 after his purchase of the McJenkin farm and the one-third interest in the Wilson land, he contracted in writing with the trustee of his wife, with her assent, for the sum of $1,406.25 which has been paid him out of the trust fund, to convey these lands to said trustee to be held upon the trusts of the marriage settlement, which contract has not hitherto been carried into effect by deed for that purpose.

He further says that the deed of Clayton was intended by the parties to convey the land upon the same trusts, but it was by mistake so drawn as to secure a contingent equitable estate to the defendant, and he asks that it be so corrected as to conform to this common intent. The other material allegations are controverted.

At the same time, the trustee, Webb, was allowed to interplead and assert his equitable estate in the premises, and

he reiterated the allegations contained in the second answer in regard to his purchase of the land for the trust fund, and his payment therefor from the sale of slaves conveyed in the deed of marriage.settlement, and he demands of the defendant his specific execution of his prior contract to convey the same.

At spring term, 1872, the death of the trustee was suggested and an order made that notice issue to the plaintiffs to show cause at the next term why his successor should not be made a party in his stead. After many continuances, the cause was removed by consent to Buncombe and thence to Henderson superior court, and there tried at a special term in June, 1880, upon issues to the jury, which, with their responses, are as follows:

1. Did the plaintiffs pay all the purchase money as alleged in the complaint? Yes.

2. Did the plaintiffs, when the bond was executed, know of the claim or interest of Webb, the trustee, in the Clayton land of one thousand and seventy acres? Yes.

3. Was the McJenkin land purchased with the trust funds or for the purposes of the trust upon the written request of the defendant and his wife to the trustee, and did he assent thereto? Yes.

4. Was the Wilson land purchased under similar circumstances? Yes.

5. Did the plaintiffs, or either of them, on February 3rd, 1865, have notice of these facts in regard to those two tracts? No.

6. What damages have the plaintiffs sustained in the premises, if any? $500.

The court thereupon adjudged that the defendant make title as demanded in the supplemental complaint, and that the judgment itself operate as a conveyance thereof under the statute, from which the defendant appeals.

The exceptions in the record are, first, for that there was

no party to represent the interests of the trustee or the cestuis que trust involved in the action; and secondly, for errors assigned in the form of the decree itself.

If the purpose of the suit was to settle the title to the land, in order to such effect it is obvious that the antagonistic equitable claims of the wife, through her trustee, should be represented and concluded by the result. C. C. P., § 61. But the action is in personam and to compel the specific execution of a covenant to convey an estate in land. This, in a proper case, he will be required to do when the title is vested in him; and when not, he may be required to make reasonable efforts to acquire such title as he has contracted to convey, and be punished if he will not. But the force of the judgment is spent upon the person of the recusant contractor, and hence if he is unable to comply with his contract and has a sufficient legal excuse for his failure, the plaintiff is without this remedy.

It is a defence to the suit that the vendor is unable to convey the title, for want of it in himself, after reasonable efforts to obtain it. Fry Spec. Perf., § 658; Pom. Cont.; § 203. And the doctrine is carried so far as to apply to the case in which the vendor, after his contract, has sold and conveyed the land to a bona fide purchaser for value and without notice of the prior equity. Ib.; LORD KENYON in Denton v. Stewart, 1 Cox, 258. And also when the concurrence of others is necessary to perfect the title. Fry Spec., Perf., § 665; Pom. Cont., § 295.

In Green v. Smith, 1 Atk., 572, LORD HARDWICK ruled that this relief will never be given, when the act is impossible to be done, and will leave a party to his remedy at law. And in Columbine v. Chichester, 22 Eng. Chan. Cases, 27, LORD CHANCELLOR COTTENHAM refused to make a decree for specific performance because of the absence of an averment in the bill of the defendant's ability to make title, while it was inferable from the statements of the plaintiff that he

could not. The general principle is that the performance of a contract will not be decreed, when the decree, by reason of the defendant's incapacity to perform, would be a "vain thing."

In *Love* v. *Camp*, 6 Ired. Eq., 209, it is decided that a vendor undertaking to sell land which he does not own to a purchaser who is ignorant of his want of title, will be compelled to make efforts to procure the title and will not be excused merely upon the ground that he does not possess it. The same learned judge, delivering the opinion of the court in *Taylor* v. *Kelly*, 3 Jones Eq., 240, declared and enforced the plaintiff's right to secure the amount for which the defendant subsequently sold the land to a *bona fide* purchaser, though the land itself could not be pursued and reclaimed, and the same equity is reasserted in *Sugg* v. *Stowe*, 5 Jones Eq., 126. A less vigorous and more reasonable statement of the doctrine is made by READE, J., in *Love* v. *Cobb*, 63 N. C., 324, in assigning reasons why the application could not be sustained for a judgment against the vendor. "And (3) if a specific performance were decreed, it might amount to the perpetual imprisonment of Cobb, upon his failure to make title, for he has not the title; or at least it would put him in the *power of Homesly to demand an unreasonable price for title. It would be otherwise if the court could see that it was quite within the power of Cobb to get the title upon fair terms.* Nor would it avail the plaintiff anything to have a decree against Cobb with covenants of warranty of title, so as to give the plaintiff remedy at law upon the warranty, for he has the like remedy now upon the contract, if it be valid."

In the present case the defendant can only fulfil his contract, by acquiring the equitable estate vested in the trustee and arising out of the defendant's prior contract with him, for which full payment has been made, and this can only be effected by the concurrence of the wife, for whom and her

children it is held by the trustee. To compel the defendant to perform his contract and in order thereto to obtain a conveyance from his wife, may involve an exercise of authority utterly inconsistent with that freedom of volition essential to its validity, and the absence of which undue influence must appear upon a private examination to give effect to her deed. "The wife ought not," in the words of the same judge, "to be exposed to this compulsion on the part of her husband."

The plaintiffs do not demand a decree to compel the defendant to acquire, in order that he may convey, the title stipulated in his covenant, but that such estate and interest as he does possess shall be transferred to them. Ordinarily this proposition would be free from objection, for certainly a vendor ought to do what he is legally capable of doing in carrying out his agreement. But here the defendant, in his relations to his wife's trustee, holds only the naked legal title, the whole equitable estate being in the trustee, and such a decree would in effect disable the defendant from performing his previous and superior obligation, while it would be but a change of trustees in the substitution of the plaintiffs in place of the one appointed in the deed. The trusts would follow the transfer and would be asserted against them. So that if the trustee had remained a party his paramount equity would have prevailed; and to avoid circuity, the controversy would have terminated in a judgment directing the conveyance of the legal title to himself. The verdict determines the material facts, and the absence of the succeeding trustee from the record cannot enlarge the plaintiffs' rights in this regard. While then the plaintiffs may insist that the defendant shall make proper efforts to remove the impediment arising out of his prior contract and thus enable himself to perform that entered into with the plaintiffs, it would be manifestly unjust for the court itself to take any action impairing the rights of the trustee, or obstruct-

ing his remedy against the defendant to obtain the out-standing legal estate and thereby perfecting his title.

Again it is a well settled rule that where there are equal equities, and one acquires the legal estate, he will not be disturbed in the possession of his legal advantages by the interference of a court of equity. If the transfer of the legal estate by virtue of the judgment places the plaintiffs in this favorable possession, it would be in effect to destroy the older and better for an inferior and junior equity; and if not, it would subject the former to the inconvenience of pursuing and asserting it against the plaintiffs.

The difficulty is not obviated by the form of the decree, which itself undertakes to pass the defendant's estate without the execution of a deed, for the purpose and effect of the statutory provision are only to obviate the necessity of an actual conveyance, and to give to the decree the same force and operation. But it appears that the defendant has an interest in the larger tract of land and the plaintiffs are entitled to that. But for the reasons stated, the judgment is erroneous and must be reversed, and the cause remanded for such further proceedings as the plaintiffs may be advised to take, according to this opinion.

Error.                                              Reversed.