TILLERY v. LAND.

(Filed November 22, 1904).

1. SPECIFIC PERFORMANCE—*Agency.*

> Specific performance will not be decreed as to land agreed to be conveyed by a person as agent, such agent having no authority to make the contract.

2. SPECIFIC PERFORMANCE—*Infants.*

> Specific performance will not be decreed as to the lands of infants unless the contract is ratified after they become of age.

3. SPECIFIC PERFORMANCE—*Married Women—Husband and Wife—The Code, sec. 1256.*

> Specific performance of the realty of a married woman will not be decreed when the contract is executed in compliance with the statute.

4. SPECIFIC PERFORMANCE—*Tenancy in Common.*

> Where tenants in common contract to convey land, specific performance will be decreed against those whose contract is binding, though no conveyance of the others can be had.

5. SPECIFIC PERFORMANCE—*Vendor and Purchaser.*

> Specific performance against a vendor denied, where it was intended to convey the interests of all owners in the premises, and a conveyance by the other owners could not be obtained.

ACTION by L. F. Tillery and another against E. M. Land, John H. Taylor and others, heard by *Judge C. M. Cooke* and a jury at May Term, 1904, of the Superior Court of NASH County. From the judgment rendered the plaintiffs and defendants Land and Taylor appealed.

*Gilliam & Bassett, F. S. Spruill* and *W. H. Ruffin,* for the plaintiffs.

*Jacob Battle,* for the defendant Taylor.

*G. V. Cowper* and *N. J. Rouse,* for the defendant Land.

MONTGOMERY, J.   This action was brought by the plaintiffs to compel the specific performance by the defendants of a contract in the following words: "This contract, made this October 27, 1902, by and between E. M. Land for himself and as agent for the other owners, of the first part, and L. F. Tillery, of the second part, shows that the party of the first part agrees to sell to the party of the second part the tract of land in Nash County, near the town of Rocky Mount, adjoining the lands of L. F. Tillery, J. R. Green and others, known as the 'Taylor and Land tract,' containing about 577 acres, for which the party of the second part agrees to pay the sum of $6,500 or pro rata according to a new survey to be made at the expense of the first part; said purchase-money to be paid one-half cash on the execution and delivery of complete title to the premises, and balance to be paid in three years from delivery of the deed, with 6 per cent. interest from date of delivery." (Signed and sealed by E. M. Land, agent, and L. F. Tillery).

After the issues were submitted, it was agreed by the parties that the jury should be discharged and that his Honor should try the case both as to the facts and the law.   His Honor found as follows: "1. That the contract referred to was executed by L. F. Tillery and E. M. Land, agent. 2. That at the time of the execution of the contract E. M. Land was authorized to contract to sell his own undivided interest in said land, which I find to be one-sixth of same. 3. That he had authority to contract to sell John H. Taylor's interest in the land, which is admitted to be one-tenth, at the rate of $6,500 for the whole tract, which was to be net to him, subject only to his pro rata part of the charge of executing and registering a conveyance, which by consent of parties is fixed at $20, making his part thereof $2, and that said Land had no authority to contract to sell the interests of the other defendants.   4. That at the time of the execution of the con-

tract Land contracted as agent of Taylor to sell the entire tract for $6,500, subject only to a charge against his share of the cost of executing and registering the conveyance, and that for himself alone he (Land) contracted to have a new survey made of the land and to pay the cost thereof, and that the price should be determined by the result of the new survey, and should be in the same proportion, in respect to price named, as the quantity discovered by the new survey should bear to 577 acres.     5. That Tillery, on October 28, 1902, assigned to his co-plaintiff, W. L. Groom, one-half of all the rights and interests vesting in him by virtue of the said contract of October 27, 1902." Upon the foregoing findings the Court adjudged that John H. Taylor recover of the plaintiff L. F. Tillery $650 upon the execution by him, the said Taylor, of a deed conveying his interest in the land to the plaintiffs, Tillery and Groom, in fee, and that if said Taylor refuse to receive said money and to execute said deed on or before the first day of September next, then the said plaintiffs may pay the said sum into the Clerk's office, and upon its payment therein the Clerk of this Court, who is hereby appointed a commissioner for that purpose, shall execute a deed to the plaintiffs conveying to them the said Taylor's one-tenth interest in the land, and shall have the same proved and registered, the expense of which shall be paid out of said fund. (The plaintiffs waived the time unelapsed for the payment of one-half of the price under the contract).     It is further adjudged that Land is entitled to recover of the plaintiff Tillery $1,083.33, to be reduced if the new survey hereinafter ordered shall discover that the number of acres is less than 577, by the proportion of said difference, and if the new survey shall discover that there is a greater quantity than 577 acres this recovery shall be increased accordingly, and this shall apply to the share of said Taylor as well as his own— Land alone being responsible for this part of the contract.     It

is further adjudged that John C. Beall be appointed to survey the land and make three plots of the survey, one to be filed with the Clerk, one to be delivered to the plaintiff, and one to the defendant Land, and that the surveyor make report to this Court—the survey to be made in the next sixty days. As to all the other defendants, except Land and Taylor this action stands dismissed. And further, that the defendants Land and Taylor, as to the costs incurred up to the filing of this judgment and the enrolling of the same, pay the same in equal proportion; and upon the payment of the amount ascertained to be due Land, as provided above, after deducting any costs against him, he shall execute a deed to the plaintiffs conveying his share of the land to them in fee.

After his Honor had announced his finding of the facts the plaintiffs moved the Court for a decree of specific performance against all the defendants, and upon that motion being overruled they then asked for a decree against E. M. Land, Edward Perry and wife, and E. M. Land, guardian of Annie Land, and John H. Taylor. That motion was refused except as to E. M. Land and John H. Taylor. The plaintiffs and the defendants, Land and Taylor, excepted to the judgment and appealed.

At the time of the contract two of the defendants, Annie Land and James Taylor, were infants, and Lucy Perry was a married woman, and there was no evidence that either one of the defendants, except Taylor, ever authorized the defendant Land to contract to sell his or her interest in the land described in the contract. His Honor therefore properly refused to have a decree entered against the infants or Mrs. Perry, or against either one of the adult defendants who had not authorized the defendant Land to contract to sell their interests in the land. However, in the oral argument here, as well as in the brief of the plaintiffs, it was contended that upon the face of the contract, as a matter of legal construc-

tion, Land had obligated himself personally to see to it that a proper deed should be executed by himself and the defendants for the entire interest and estate in the land, and that therefore specific performance should be decreed against him, he not having shown on the trial that he could not procure the other defendants to join him in such conveyance.    It will be seen, though, that the defendant Land not only did not claim the whole of the property, but distinctly declared that there were others who owned interests in the land, and that he was acting for them as their agent and signed the contract as their agent.    So this is not a contract such as where one had made an agreement to convey land generally without disclosing the ownership and where the Court might grant a decree in *personam* against the vendor for specific performance, although he did not own the land at the time of the contract.    The plaintiffs here knew that Land had only a fractional interest in the property and that he was acting as agent for the other owners; and therefore as a matter of law the plaintiffs could not have specific performance against Land for the interests of his principals.    The plaintiffs could only have specific performance against such of the defendants as authorized the defendant Land to contract for them, and as we have seen there was no evidence tending to show that either one of them, except Taylor, gave him such authority.    If the infant defendants and Mrs. Perry had authorized the defendant Land to convey their interests in the property, specific performance could not be enforced as to them.    The contracts of infants to sell their real estate may be ratified after they become of full age, and the courts might, and would in proper cases, compel them to specifically perform their contracts. But as long as they remain infants they could not be made to execute such contracts.    As to married women, there is but one way in which their real estate or any interest therein can

be conveyed under an executory contract to convey the same, and that is under the provisions and authority of section 1256 of The Code.

No Error.

### DEFENDANT E. M. LAND'S APPEAL.

It was argued here that the contract was an indivisible one and had reference to the tract of land as a whole and not to the separate share of either one of the tenants in common, and therefore that no decree could be entered ordering specific performance as to the separate share of Taylor. There is nothing in the case going to show that it was the purpose or desire on the part of the defendant Taylor, or Land, that the tract of land should be sold as a whole. In fact, Taylor's letter to his agent (Land) showed that he was only concerned in the sale of his interest and that of his brothers and sisters. While the plaintiffs in the case would not be compelled to take a part of the land if they could not get title to the whole, they could nevertheless compel either party to the contract to convey his interest in the premises. In Fry on Specific Performances, at section 1222, it is said: "Although as a general rule where the vendor has not substantially the whole interest he has contracted to sell, he, as we have seen, cannot enforce the contract against the purchaser, yet the purchaser can insist on having all that the vendor can convey, with a compensation for the difference." The same principle has been decided in our own Court in *Swepson v. Johnston,* 84 N. C., 449.

There was no error in any of the rulings of his Honor, and the judgment is

Affirmed.

DOUGLAS, J., dissents from the above opinion in Land's appeal.

TAYLOR'S APPEAL.

CONNOR, J.   The facts as gathered from the record are:
The land in controversy, containing about 577 acres, belonged
to E. M. Land, Lucy Perry and Annie Land, the last named
an infant, all residing in this State, owning one-sixth each;
and John H. Taylor, W. D. Taylor, James J. Taylor and
Margaret and Mary Taylor, the last named an infant without
general guardian, residing in the State of Florida, owning
one-tenth each.   The land is situate near the town of Rocky
Mount.   The plaintiff Tillery, residing in the said town, be-
gan some time in September, 1902, a correspondence with
E. M. Land, residing at Kinston, N. C., in regard to pur-
chasing the land.   Thereupon, E. M. Land wrote John H.
Taylor in regard to Tillery's offer.   On September 7th Tay-
lor writes: "We will sell the interest we have in the Rocky
Mount farm.   But am not especially anxious to do so, as I
consider it a good investment.   Ask Mr. Tillery to make us
an offer for it and we will consider it."   Land, two days
thereafter, writes Tillery, quoting Taylor's letter and saying
that he can make an offer through him.   On the 17th Tillery
writes Land, saying that he could handle the land at six or
seven dollars per acre, asking him to write Taylor.   Land
does so, suggesting a sale of "the whole tract" at $6,000—
saying, however, that he had not advised with his sisters, as
"I thought he only wanted half interest."   On the 18th Tay-
lor writes, "I think we would sell our interest, provided we
could get $6,000—that is, $3,000 for our interest"; adding a
postscript, "I think it would simplify the matter if you all
would join us and dispose of your interest at the same time,
then one deed could be made to cover all."   On October 9th
Tillery writes Land, making a proposition to pay ten dollars
per acre, provided they would include about two acres of the
land.   On the 10th Land writes Taylor that he has offered

Tillery the farm for $6,500, enclosing Tillery's reply. He says: "I have written him that we would have the farm surveyed if he accepts this offer of $6,500, but could not include the two acres.  *  *  *  If you do not approve entirely of this offer of $6,500 please wire me at once on receipt of this letter." On the 15th of October Taylor writes Land, acknowledging receipt of letter and saying, "I do not think that there is any necessity of having the farm surveyed," giving as his reason that it had been recently surveyed and a plot should be among the papers, and saying, "We are willing to take $3,250 for our share, and if there is any expense of making transfer of title, of course we will pay our share." October 27th the plaintiff and defendant E. M. Land signed the contract set out in the opinion of the Court. On the 28th Land wrote Taylor, notifying him of the execution of the contract and saying: "I hope this will meet the approbation of all of you concerned. This is substantially the offer I wrote you that I had made Mr. T. If there is any cause of complaint I wish you would advise me at once and I will try to adjust the same. I've made a contract with Mr. T., yet I might induce him to surrender same if your heirs are not satisfied." He concludes by asking Taylor to wire at his expense concerning the trade. The record shows that on November 3d Taylor wires Land, "Do not act for us until you hear further." The record in regard to the date of this telegram is evidently wrong, because on November 2d Taylor writes Land: "I wired you this A. M. not to act for us until you hear further from us. I do not want to be hasty in selling our interest in the farm until I learn its value. We might regret it at our leisure. We have suffered too many privations to pay the interest on the debt ever to throw it away. I will write you later on." Land, on November 10th, writes Taylor that he was trying to get Tillery to cancel the contract, and regretting that he had not submitted the final proposition

to him for final decision.    Taylor on the next day writes
Land, saying: "We are sorry that you made any contract to
sell the farm when you were not authorized to act or sign any-
thing for us."    It was admitted that Land had no other
authority from Taylor than is contained in the correspond-
ence.    The only oral testimony heard by his Honor was that
of Mr. Thomas H. Battle, who said he saw the contract of
October 27, 1902; that Land said to Mr. Tillery that he had
received a letter from John H. Taylor (or one of the Taylors,
he had forgotten which), and that he was authorized by Tay-
lor to sell the land for $6,500, but was not authorized to make
any survey at their cost or to make any abatement of the price
if the survey should show that there were less than 577 acres,
but that he (Land) would include in the contract the pro-
visions as to those matters and in some way arrange that;
that he was not authorized by John H. Taylor to make any
agreement that would charge against him or the Taylor heirs
any expense for those provisions, but that the land had been
so recently surveyed that he was not afraid to run the risk.

His Honor refused a decree against any of the Taylor heirs
except John H. Taylor, and as to him directed a conveyance
of his one-tenth interest.    He made the same decree against
Land, with the additional provision that a survey be made
and the amount due Land be reduced if it be discovered by
the survey that the number of acres is less than 577, by the
proportion of said difference, and if said survey shall discover
that there is a greater number of acres the amount to be paid
be increased accordingly.    The last provision is made to apply
to defendant Taylor.    A survey is ordered, etc.

There are certain well-settled principles by which courts of
equity are governed in suits for specific performance which
must be kept constantly in view.    In discussing the appeal
we wish to say that we are entirely satisfied there was no mis-
representation or suppression of facts, or purpose to mislead

136——35

in the negotiations which led up to, or in the execution of the contract of October 27, 1902. We are sure that all of the parties were acting in perfect good faith and with full knowledge of the status of the title. We shall therefore omit in citing authorities any reference to such well-known grounds for refusing specific performance as fraud, misrepresentation, concealment, etc. The other equally well-known requirement, which is not to be found in this case, is that there shall be a contract the terms of which are clear, plain and well understood by and between the parties. It is apparent from the language used by defendant Taylor that he never contemplated a sale of his undivided interest in the land. Assuming, for the purpose of the argument, that he authorized the defendant Land to execute a contract for the sale of any interest, it is to my mind clear that representing his brothers and sisters and speaking for himself, it was his and *their* interest which he was willing to sell and not *his alone.* The language used shows this—"We are willing to sell the interest we have." "I think we would sell our interest in the place." "We are willing to take $3,250 for our share." There is no intimation of a purpose to sell otherwise than the entire interest of the Taylor children. It is conceded that when one representing himself to be the owner of the entire estate and title contracts to sell the land, he may, at the option of the vendee, be compelled to convey such interest as he has, with reduction of price. The principle is thus stated by Mr. Pomeroy: "When the vendor's title proves to be defective in some particular, or his estate is different from that which he agreed to convey, * * * it is plain that the contract cannot be specifically performed according to its exact terms at the suit of either party. In such case the Court will decree a conveyance of the vendor's actual interest and allow to the vendee a pecuniary compensation or abatement from the price," etc. Pomeroy Specific Per., sec. 434.

It is conceded that this case does not fall within that class. Taylor has never, at any time, or in any manner, proposed or suggested that *he* would sell the interest of his brothers and sisters. He at all times says, *"We* will sell *our* interest." Mr. Tillery does not in his complaint, or in any testimony, suggest that he was contracting for John H. Taylor's interest. The entire correspondence negatives such a suggestion. It is the *land* which he wishes to buy—knowing perfectly well the condition of the title. It is true that the Court will not permit the right to have specific performance evaded or denied by a mere technical or immaterial objection. It will rather look to the real, substantial terms of the contract and decree its performance with such variations as will effectuate the intention of the parties. In this case the difference between the contract as made and as enforced is material. There has not been the *aggregatio mentium* which is essential to the completion of an enforcible contract. It is difficult to cite cases directly in point, because in suits for specific performance the peculiar features of each case vary so much. In *Jackson v. Torrence,* 85 Cal., 521, the defendant, together with his wife, entered into a written contract to sell a hotel and furniture which belonged to them jointly. The contract was not executed by the wife in accordance with the laws of the State. She refused to convey. The Court below decreed specific performance by the husband. The Supreme Court upon appeal by the husband, said: "He contends that the Superior Court erred in compelling him to convey his interest in the property on receipt of its proportion of the agreed price. He says that in so decreeing the Court compelled him to perform a contract which he never made or intended to make, and in this position we think he is sustained by the facts above stated." * * * The only contract he executed, or intended to execute, was a contract in which his wife was to join for the conveyance of the whole

property for a round sum. Until the contract was completed by the accession of the wife there was no contract of which there could be any breach or failure to perform. The fact that the contract was made by husband and wife is noticed and emphasized by the Court as an additional reason why specific performance by one should not be decreed—but the point upon which the case rests is set forth in the extract cited. The question again came before the Court in *Olson v. Lovell,* 91 Cal., 506, wherein one of two tenants in common entered into a written contract in behalf of both to convey the common tenement, signing his own and his co-tenant's name without any authority. It is stated in the opinion that plaintiff did not rely upon any legal authority of defendant to bind Judson, but upon the probability that the latter would agree to whatever defendant might promise. *McFarland, J.,* said: "The case at bar cannot be distinguished in principle from *Jackson v. Torrence.*" He notices the language of the Court in regard to the relation between husband and wife, and says: "But the ground upon which the decision rested was that to force a specific performance upon Torrence would be to compel him to perform a contract which he never made or intended to make." It seems to us that these cases rest upon the correct principle. Taylor has by decree been compelled to do that which neither he nor the plaintiff ever expected him to do, or supposed that he was contracting to do. It is exceedingly doubtful upon a fair view of the entire correspondence whether Taylor ever constituted Land his agent to conclude a contract. It would seem rather that the correspondence was still in the nature of a negotiation. Conceding, however, that the contract is complete, and that the construction put upon it by the Court is correct, we are of the opinion that in view of all the circumstances the doubt as to the real intention of Taylor—the fact that immediately upon being notified that Land had made the written contract

he promptly disaffirmed it—asserting, before there was any
change in conditions or offer of higher price, etc., that Land
"was not authorized by us to act or sign anything for us,"
the Court should not decree, with modifications, the convey-
ance of his one-tenth undivided interest.   It is elementary
learning in equity jurisprudence that the right to demand
specific performance is not an absolute perfect right, but
one resting in the sound discretion of the Court.   To sustain
the proposition it would seem unnecessary to do more than
refer to the most approved works on Equity Jurisprudence.
They all state the principle, and the Chancery Reports from
the earliest time in England and this country contain numer-
ous decisions declaring and enforcing it.   *Gaston, J.,* in
*Leigh v. Crump,* 36 N. C., 299, thus states the doctrine:
"The specific execution of a contract in equity is not a mat-
ter of absolute right in the party, but of sound discretion in
the Court.   An agreement to be carried into execution then
must be certain, fair and just in all its parts.   Although it
be valid at law, and if it had been executed by the parties
could not be set aside because of any vice in its nature, yet,
if its strict performance be under the circumstances harsh
and inequitable a court of equity will not decree such per-
formance, but leave the party claiming it to his legal rem-
edy."   *Herren v. Rich,* 95 N. C., 500.   The doctrine is
stated clearly by *Mr. Bispham:* "While equity will grant
specific performance in all cases where the dispensation of
exact justice would seem to require it, yet on the other hand
it has been found necessary to circumscribe the exercise of
this delicate and effective power by limitations.   Specific
performance is usually said to rest in the discretion of the
Chancellor.   This discretion, however, is a judicial discre-
tion.   It is not a mere arbitrary will, but is subject to cer-
tain definite and well ascertained rules within which its
play is confined."   Eq., 494 (6 Ed.).   Among the reasons

which will induce the Court to refuse the decree is, "that it is not clear that the minds of the parties have come together." This is illustrated by the case of *Chute v. Quincy*, 156 Mass., 189. If the specific enforcement of the contract "would operate in a manner different from that which was in contemplation of the parties when it was executed," it will not be so decreed. *Shaw, C. J.*, in *Railroad v. Babcock*, 6 Met., 346. "The bargain must have been completely determined between the parties, and its terms definitely ascertained." So long as negotiations are pending over matters relating to the contract, and which the parties regard as material to it, and until they are settled and their minds meet upon them, it is not a contract, although as to some matters they may be agreed." *Brown v. Brown*, 33 N. J. Eq., 650. "Nor will the Court interfere when the evidence leaves the agreement as to any of its terms in uncertainty." *Ib.* "No rule is better established than that every agreement, to merit the interposition of a court of equity in its favor, must be fair, just, reasonable, *bona fide, certain in all its parts, mutual,* etc. If any of these ingredients are wanting, courts of equity will not decree a specific performance." *Stoddert v. Bowie*, 5 Md., 35. That certainty in its terms is required by the Court before specific performance is decreed is laid down in Story Eq., 769-770; *Tyson v. Watts*, 1 Md. Ch., 13; *Mills v. Van Voorhies*, 20 N. Y., 413. "A court of equity is always chary of its power to decree specific performance and will withhold the exercise of its jurisdiction in that respect, unless there is such a degree of certainty in the terms of the contract as will enable it at one view to do complete equity." *Morrison v. Rossignol*, 5 Cal., 62. In *Trigg v. Read* (Tenn.), 42 Am. Dec., 447, the Court adopted Judge Story's statement that "It requires much less strength of case on the part of the defendant to resist a bill to perform a contract than it does on the part of the plaintiff to maintain a

bill for specific performance." It is said that as the defendant was willing to sell his own and his brothers' and sisters' interest for $3,250, no harm comes to him by compelling him to take his proportion of the amount and convey his interest in the land. I do not conceive this to be an answer to his objection to the decree. In the first place, he never contracted to sell *his interest*. The Court may not make a contract for him. We can well understand how he, as is indicated by the correspondence, being the oldest of his brothers and sisters, is in some measure their natural guardian. That from considerations, which may well be urged in a court of equity, he does not wish and never intended to sever his interest from theirs. That his obligation to them by reason of his relationship has controlled him in carefully guarding his written words, so that no one would understand that he was proposing to do so. There is an expression in his letter of November 11th in which he speaks of privations suffered to pay the interest on the debt over the land showing that was in his mind. Again, his perfect frankness in writing Mr. Land shows that he was acting in good faith. The plaintiff has not paid out one cent for the contract nor in any manner changed his position. He has doubtless made a good bargain—which he had a perfect right to do—but as it is evident that the defendant did not intend to sell otherwise than his letters so clearly express, we do not think, in the light of the well-settled doctrine of equity and the many decided cases, the defendant should be held to convey his undivided interest in the land.

Error.

CLARK, C. J., and MONTGOMERY, J., dissent.

DOUGLAS, J., concurring as to Taylor and dissenting as to Land. I concur in the opinion of the Court that in the exer-

cise of a sound legal discretion we should not compel Taylor to sell his individual interest separate and apart from that of his brothers and sisters when no such result was in contemplation of either party when the contract was made. Both parties evidently contemplated a conveyance of the entire tract of land. I agree with the Court that specific performance is largely within the discretion of the Court, to be exercised indeed within certain well-defined limits, but none the less equitable in its nature and its application. Unknown to the common law, it is not an absolute right, and is never enforcible when inequitable in its character and oppressive in its results.

It is true that this Court has said in *Stamper v. Stamper,* 121 N. C., 251: "While it is universally conceded that specific performance is a matter of discretion, the best authorities agree that where a contract relating to land is not objectionable legally, it is as much a matter of course for a court of equity to decree specific performance as it is for a court of law to give damages for a breach thereof." We were then speaking of a contract that could be enforced in its entirety, and the land itself could be conveyed. In the case at bar the contract itself cannot be enforced as made, but only *pro tanto;* while the land itself cannot be conveyed, but only an undivided interest therein. The plaintiff could not be put in exclusive possession of any part of the land, and could enforce his undivided ownership only by compelling a division of the land or a sale thereof, perhaps greatly to the injury of his co-tenants. Therefore I concur in the opinion of the Court as to Taylor; and for identically the same reasons I dissent therefrom in its holding that Land must convey his individual interest. Why should not the same equitable principles apply to Land? The same equitable discretion exists as to both, why should it not be equally exercised? Taylor did not contract to sell his individual

interest; neither did Land. Taylor said "we will take
$3,250 for our half; Land said "we will take $6,500 for the
entire tract." It is said that Land was authorized to sell
his individual interest; it was found as a fact that he was
also authorized to sell Taylor's interest. He did not agree
to sell either separately, but only in so far as they were in-
cluded in the entire tract. Of course both Land and Taylor
could have sold and conveyed their individual interests, but
they have not done so. They have only *contracted* to convey,
even if we assume that a joint agreement to sell the entire
tract was in legal effect an individual agreement to sell their
separate interests. At best, the contract is therefore execu-
tory and is specifically enforcible only in a court of equity
and in accordance with equitable principles. Under the
facts found by the Court below, I do not see that Taylor
stands in any better position than Land; and I see no reason
why the plaintiff should not be relegated to his legal right of
action in both cases. There is a material difference between
the case at bar and those cases where the land itself can be
conveyed with a diminution of price on account of existing
encumbrances or failure in the stipulated acreage.

The fundamental principle of specific performance—that
which brought it into existence—is that there is no adequate
remedy in an action at law; that the thing bargained for is
of such a nature, either intrinsically or from association, that
mere money damages cannot afford complete compensation.
For instance, a family portrait of small intrinsic value would
afford no basis for damages at law. The same was held as
to slaves whose individual characters and associations were
so different that one might not be able to take the place of
another. Land also has distinctive characteristics that might
give it a special value and find just relief only in specific
performance. But one dollar is like another dollar. All
dollars are alike that have the same purchasing value, and

therefore find their fullest compensation in pecuniary damages.    As in the case at bar, the plaintiff could not recover any specific part of the land.    I do not see why he has not an adequate remedy in an action for breach of contract.