JOHNSON et al. v. MANSFIELD.
(No. 6531.)

(Court of Civil Appeals of Texas. Galveston. April 5, 1914. Rehearing Denied May 7, 1914.)

1. SPECIFIC PERFORMANCE (§ 105*)—DILIGENCE—EXCUSE.

Plaintiff in 1904 entered into a written agreement, whereby in consideration that plaintiff and W., who were brokers, would obtain land at a low price, defendants agreed to purchase it and to give plaintiff and W. an undivided one-half interest therein for $1,500 or, when the proceeds of the timber cut or land sold to others amounted to $1,500, a deed of their interest would be executed to plaintiff and W. Defendants settled with W. and sold a part of the land to him for a price in excess of $1,500, and plaintiff on discovering the fact, in 1910, sued for specific performance, and tendered $750 in payment for his one-fourth interest. Held that, as it necessarily required time to establish sawmills and to cut and sell the timber, plaintiff was excused from not sooner seeking a performance of the contract.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 325–341; Dec. Dig. § 105.*]

2. SPECIFIC PERFORMANCE (§ 97*)—ACTION—TENDER.

In such case, plaintiff, on a showing that defendant had settled with W. and sold land to him for a price in excess of $1,500, had the right to maintain a suit for specific performance as to his undivided interest without any tender; and, even if a tender was necessary, his

tender of $750 at the trial was sufficient both as to time and amount to entitle him to maintain a suit.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 286–298; Dec. Dig. § 97.*]

3. SPECIFIC PERFORMANCE (§ 12*)—RIGHT OF ACTION—JOINT INTEREST.

In such case, plaintiff did not lose his right to the specific enforcement of a conveyance to the extent of his interest under the contract, merely because W. by accepting a settlement from defendant could not be properly joined as a party plaintiff.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 26–28, 37; Dec. Dig. § 12.*]

4. EVIDENCE (§ 444*)—PAROL EVIDENCE—CONSIDERATION OF CONVEYANCE.

An obligation to convey lands, independent on its face, may be shown by parol evidence to be dependent upon a consideration not expressed in the obligation or instrument declared on.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1929–1944, 2049; Dec. Dig. § 444.*]

5. CONTRACTS (§ 212*)—TIME FOR PERFORMANCE—REASONABLE TIME.

Under an agreement, whereby, in consideration that plaintiff would obtain land at a low price, defendants were to purchase it and to convey an interest to plaintiff and another for $1,500, or when sales of timber and land equaled that amount, but not providing any time in which it should be performed, a reasonable time was implied, to be determined under all the facts and circumstances.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 944–955; Dec. Dig. § 212.*]

6. SPECIFIC PERFORMANCE (§ 6*)—RIGHT OF ACTION—MUTUALITY OF OBLIGATION.

In such case, it was not essential to the validity of the contract or to plaintiff's right to enforce specific performance thereof that there should be a reciprocal obligation or mutuality of remedy; plaintiff having performed his part by procuring the land at the price set.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 9–11; Dec. Dig. § 6.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Action by H. P. Mansfield against J. S. Johnson and others with cross-plea by defendants. Judgment for plaintiff, and defendants appeal. Affirmed.

E. B. Pickett, Jr., of Liberty, and Jones & Jones, of Houston, for appellants. Stevens & Stevens, of Liberty, for appellee.

McMEANS, J. H. P. Mansfield brought this suit against J. S. Johnson, Z. S. Johnson, and E. J. Waldron to enforce specific performance of an alleged contract for the conveyance of certain land. He alleged that on January 15, 1904, he conveyed two tracts of land in Liberty county to appellants Johnson, and that the Johnsons at the time executed the agreement on which he sued, by the terms of which they agreed to convey to plaintiff and defendant E. J. Waldron an undivided one-half interest in the land upon the payment by plaintiff and Waldron to the Johnsons of the sum of $1,500; that the contract provided that the land could be sold by the Johnsons and that the timber thereon should be cut by them, and that when the Johnsons had cut a sufficient quantity of timber at the rate of $1.25 per thousand feet stumpage, or should have sold off any portion of the land, and the value of said timber cut at said price, or any part of said land sold as aforesaid, should at any time become equal to $1,500, then the defendants were to convey to plaintiff and Waldron an undivided one-half interest in said land, or a specific portion thereof that might be agreed upon in satisfaction of the undivided one-half interest of plaintiff; it being further agreed that the $1,500 could include the price of timber cut from said land or the proceeds of the sales of any portion of said land, and that all of said sum could be made alone by timber cut, at the price stated, or it might be made alone by the sale of any portion of the land. He further alleged that defendants erected a sawmill and cut timber from said land of the value of $1,500, at the rate specified, but that they refused to convey the land to plaintiff; that in 1906 the defendants made some kind of a settlement with the defendant Waldron by adjusting and compromising his claim, the exact terms of which were unknown to plaintiff, for which reason the said Waldron was made a party defendant, and it was prayed that he be required to answer and disclose what settlement was made by him with defendants Johnson. He further alleged that in 1906 he tendered to the Johnsons $750, and demanded that they convey to him an undivided one-fourth interest in said land in satisfaction of the contract. He further alleged that the moving consideration on the part of the said Johnsons in the execution of the instrument declared upon was that the plaintiff should procure the title of the lands described in his petition from T. P. Ayers, and that the plaintiff had performed his part of the said consideration and did procure the title from said Ayers. It was further alleged that the instrument declared upon had been executed in duplicate; one copy being retained by the defendants and one copy was kept by Ira P. Jones, Esq., to be held by him for all parties concerned, and it being understood and agreed that said instrument would not be recorded in order that the records might not show the claim of plaintiff and Waldron, thus facilitating the defendants Johnson in making sales of the land. It was further alleged: That the defendants fraudulently concealed from the plaintiff the fact as to moneys realized out of the sale of said land and timber, and that the plaintiff did not ascertain until about the 1st day of January, 1910, that the defendants had realized $2,000 out of the proceeds of timber cut and sales of land. That the amounts acquired by said Johnsons were wholly within the knowledge of the said Johnsons, and plaintiff was unable to ascertain all of the facts in regard

thereto until the first day of January, 1910. Plaintiff further pleaded that if it be found that the defendants Johnson had not cut timber of sufficient value, at the rate named, to cover the interest of plaintiff in the land in accordance with the contract, that he stood willing and ready to pay into court such amount as would be sufficient to cover his pro rata share of the land under the terms of the contract.

The appellants answered by general denial, and pleaded that there was no consideration to support the contract sued on and total failure of consideration. They further pleaded: That the agreement set up was a gratuitous offer of a gift, and not binding. That about January 15, 1904, Ayers was the owner of lands described in the plaintiff's petition, and the appellee Mansfield and Waldron came to the defendants to get them to purchase the same for a consideration of $3,000 to be paid to Ayers. That Mansfield claimed to have authority from the owners of lands adjoining and nearly surrounding the Ayers lands, and heavily timbered, and that he would sell the timber thereon to the said Johnsons. That the appellants were induced to buy the Ayers land for $3,000 and were willing to purchase the timber from Mansfield on the lands represented by him, and that Mansfield made a contract or conveyance of said timber to the appellants for himself and those he represented, and as a consideration for the contract from Mansfield and his constituents for the sale of such timber to the Johnsons the latter made an agreement by which, on being paid $1,500 by Mansfield and Waldron, they would convey to them an undivided one-half interest in the lands purchased from Ayers, and that two years was fixed as the limit of the time for such payment, and if said sum was not paid within two years the contract was to be of no further force or effect. That the only agreement made by the appellants is the one attached to their answer. That appellants never received anything of value for making said agreement. That it turned out that Mansfield was without authority from the owners to sell the timber to appellants, and that said contract was repudiated by many of his constituents, and that the same was wholly invalid and inoperative, and that by reason thereof the agreement made by the appellants to Mansfield and Waldron became inoperative and void by total failure of consideration. That the $3,000 paid for the Ayers land was the full value thereof and an adequate consideration for the conveyance. That the agreement from appellants to appellee and Waldron was a gratuitous donation based on no consideration and was a nudum pactum. That the appellants set up a sawmill on the land which they had purchased from Ayers through Mansfield and commenced to cut the timber which had been sold to them by Mansfield on the adjoining lands, and that immediately the owners for-

bade them to cut the timber and threatened them with lawsuits and injunctions and repudiated the contract and declared it not binding on them, and that appellee was estopped by reason of his acts and representations as to his authority and right to convey the timber. That a large number of the owners had never given appellee any authority to bind them. That the appellee and Waldron, within two years from the making of said contract, abandoned all claim or right thereunder and renounced any right to the said agreement and made a rescission thereof and declared that they would neither rely upon nor insist upon it any further. That the appellee should not sustain said suit because of his laches, delay, and renunciation of said agreement, and because the lands sought to be recovered had become of great value with the timber thereon, and that said land was not of the value of $20 per acre, and because of such great increase in value of said land and the large sums of money paid out by appellants in perfecting the title and defending litigation thereon, to which the appellee contributed nothing, it was now inequitable and unjust to the appellants for appellee to recover, and denied that the deed from Ayers to Mansfield, or the deed from Mansfield to appellants, created a trust, and said deed was absolute, and that there was no reservation of title or interest in the land conveyed by Mansfield to appellants, and that by reason of the lapse of more than four years since the execution of said agreement and said deeds, any trust was barred, and by cross-plea the appellants sought to have said agreement sued on declared of no further force or effect, and any cloud it cast upon their title to be removed, and for general, legal, and equitable relief.

Plaintiff dismissed as to defendant Waldron, and a trial before a jury resulted in a verdict and judgment for plaintiff, from which the defendants Johnson have appealed.

The evidence in the record justifies the following findings of fact:

On January 15, 1904, a written agreement in duplicate originals was signed by appellants, but not by Mansfield and Waldron, one copy of which was delivered to Mansfield and the other retained by the Johnsons. One of the copies was caused to be recorded by the Johnsons in the deed records of Liberty county, after which both copies were lost. The material portion of the contract declared upon, omitting field notes, is as follows: "Know all men by these presents, that whereas, H. P. Mansfield has this day conveyed to us, J. S. Johnson and Z. S. Johnson, of Liberty County, Texas, those two certain tracts of land fully set forth in said deed of conveyance described as follows: First tract—A tract of (640) six hundred and forty acres of land out of the Jose Dolores Martinez leagues Nos. (6) six and (9) nine. Second tract—All that certain tract of land contain-

ing (345) three hundred and forty-five acres and being part of league No. (9) nine of the J. D. Martinez Eleven league grant. And whereas, we have paid him, the said H. P. Mansfield, the sum of ($3,000.00) three thousand dollars each. And whereas, it is contemplated that we are to erect a sawmill upon the above mentioned and described land and to operate the same in cutting and sawing lumber from the timber thereon. Said mill which we contemplate to be erected on or by the 1st day of July, 1904, or sooner if possible. Said mill to be owned by the undersigned with all attachments and improvements that we may make on said land, pertaining to said sawmill to be owned by us and placed at our expense. And whereas, the said H. P. Mansfield and E. J. Waldron contemplate the reconveyance from us of an undivided one-half of said land to them, exclusive of said improvements, mill and attachment on payment to us of the sum of ($1,500.00) fifteen hundred dollars. And whereas, it is contemplated that portions of said land may be sold at any time hereafter by us as well as timber off of it that may be cut into lumber: It is agreed that when the sales of any portions of said land or any amount of timber cut from said land at the rate of $1.25 per thousand feet stumpage shall amount to the sum of $1,500.00, then in such event we are to deed to the said H. P. Mansfield and E. J. Waldron a one-half undivided interest in said land or a specific portion thereof that may be agreed upon in satisfaction of the undivided one-half interest of the said Mansfield. It is hereby agreed that the said amount of ($1,500.00) fifteen hundred dollars shall include the prices of said timber first cut off of said land or the proceeds of the sales of any portion of said land or the said ($1,500.00) fifteen hundred dollars may be made alone from the timber at the price of $1.25 per thousand feet stumpage or it may be made up from the sale of any portion of said tracts of land. It is understood and agreed by us that in case of any sales of any portion of said above-mentioned tracts of land we are not to sell the same for less than $40.00 per acre without the consent of all parties hereto in writing, but there is not restriction or limitation upon the maximum amount or price that we may receive for said land. When the said $1,500.00 above specified has been received by us, then we are to convey to the said H. P. Mansfield and E. J. Waldron or their heirs and assigns an undivided half of all of what remains unsold in said two tracts, and it is hereby specially agreed and understood that in making a partition or division of said tract of land we are to reserve to ourselves that portion of said tracts on which our said improvements may be placed, that is the improvements shall belong to us and the portion which we are to receive in said division shall be so laid off as to include our improvements. After the division of said tract of land as hereinbefore set out the timber on that portion which shall be set aside to the said H. P. Mansfield and E. J. Waldron shall be paid for by us at the price of $1.25 per thousand feet stumpage to include all classes of timber that we may cut, but upon that portion of the land that is set aside and included in our portion we are to own the timber as well as the land. and we do not have to pay said price for said timber."

The contract introduced in evidence and relied upon by appellants Johnson is identically the same as the above, with the exception that to the clause providing for the payment of the $1,500 is added, "Within two (2) years from date, a failure to pay said sum of money shall forfeit and annul the contract." Mansfield, in the court below, attacked this additional provision as a forgery. The evidence was sufficient to authorize the jury to find that the contract declared upon by the plaintiff was the true contract, and we so find. The jury was also warranted in finding that the appellants had made a settlement with Waldron for such interest in the land as he was entitled to by conveying to him an interest therein. The consideration entering into the execution of the contract between plaintiff and defendants seems to have been this: Ayers was the owner of the land, and Mansfield, a real estate dealer, was in a position to buy it from him cheaper than any one else, and, in order to purchase the land at the price at which Mansfield could buy it, the Johnsons agreed to give him and Waldron, who it appears was also trying to sell the land to the Johnsons, an undivided half interest therein upon payment to them of $1,500. It was contemplated that the Johnsons should cut and sell the timber, and that, when they sold $1,500 worth at the price of $1.25 per thousand feet stumpage, a deed conveying an undivided half interest should be made by the Johnsons to Mansfield and Waldron; and it was also contemplated that the Johnsons might sell a portion of the land, and, if a sufficient quantity should be sold to make the stipulated amount, then a deed should be executed to Mansfield and Waldron for an undivided half of the remainder. The evidence further warrants the conclusion that the Johnsons sold a portion of the land to Waldron for a sum in excess of $1,500. At the time of the trial Mansfield tendered to the Johnsons $750 in payment of a one-fourth interest in the land, but no tender of any amount was made by him prior thereto. This suit was not filed until April 19 1910, more than six years after the execution of the contract declared on.

[1-3] Appellant under his first assignment of error, which sufficiently raises the point, contends, in effect, that plaintiff Mansfield seeking specific enforcement of the contract, must show that he has performed or offered to perform the acts which formed the consid-

eration of the undertaking on the part of defendants; and that the contract providing for the conveyance of a half interest to Mansfield and Waldron jointly, upon the payment by them of $1,500, is not complied with by Mansfield when he tendered only $750 and demanded a conveyance to himself of a one-fourth interest in the land, and that therefore he was without equity entitling him to a decree for any part of the land. This contention cannot be sustained. As before shown, tender of the $1,500 by Mansfield and Waldron was contingent upon the failure of the Johnsons to sell sufficient timber or land to make the sum of money stated. It was only in the event that this sum was not realized in this way that Mansfield and Waldron were required to make any tender. Necessarily it required time to establish sawmills, and to cut and sell the timber or to negotiate the sale of land, and this was a sufficient excuse for Mansfield not sooner seeking the performance of the contract. The testimony sufficiently shows that the Johnsons sold land sufficient in value to realize the amount agreed upon, and this of itself rendered a tender upon the part of Mansfield and Waldron unnecessary. The testimony is sufficient to show, further, that the Johnsons settled with Waldron for his interest in the land, and, this being true, a suit for specific performance brought by him would have been wholly unauthorized and could have been defeated, had it been brought, by showing this fact. In these circumstances Mansfield had the right to bring and maintain this suit in his own behalf to compel the Johnsons to specifically perform the contract in so far as his undivided interest in the land is concerned. Certainly it was not requisite that Mansfield tender the entire $1,500, after Waldron had been settled with for his interest in the land. It is equally certain that Mansfield did not lose his right to specific enforcement of a conveyance to the extent of his interest under the contract merely because Waldron by accepting a settlement from the Johnsons could not be properly joined as a party plaintiff. To so hold would be in effect to declare that the Johnsons by specifically performing their contract as to Waldron's interest, and thus putting it out of his power to maintain a suit for specific performance, had deprived Mansfield of the right to maintain an action to compel specific performance to the extent of his interest under the contract. Tillery v. Land, 136 N. C. 537, 48 S. E. 824; Townsend v. Blanchard, 117 Iowa, 36, 90 N. W. 519; Ward v. Walker, 159 S. W. 320. And even if a tender by Mansfield had been necessary, we think in the circumstances of the case the tender at the time of trial was sufficient both as to time and amount to entitle him to maintain the suit.

[4-6] Appellants contend by their second assignment that the court erred in admitting in evidence, over their objection, the contract sued upon by plaintiff. The objections offered were: (1) That the contract failed to show any consideration to support it, (2) because it stated no time within which it was to be performed by defendants, and (3) because of the absence of reciprocal obligations or mutuality of remedy. The objections are not well taken. An obligation to convey lands, independent on its face, may be shown by parol evidence to be dependent upon a consideration not expressed in the obligation or instrument declared on. Younger v. Welch, 22 Tex. 419. Such consideration was shown by parol proof upon the trial. While the contract did not provide any time within which it should be performed, a reasonable time was implied, and since it was shown that the plaintiff had in part performed the consideration by procuring the land for defendants, and, further, that the defendants were cutting the timber and selling the land as they had a right under the contract to do, for the purpose of consummating the agreement, such reasonable time is to be determined under all the facts and circumstances. Under the facts of this case, it was not essential to the validity of the contract that there be reciprocal obligations or mutuality of remedies. Mansfield having in part performed the consideration by purchasing the land from Ayers for the Johnsons, and the contingencies upon which he had the right to have a conveyance to his interest having happened, by the sale of more than $1,500 worth of the land and by tendering into court the money, it was immaterial that there was no provision in the contract entitling the Johnsons to maintain specific performance against Mansfield in case they desired he should take the land and he refused to do so. Pomeroy on Cont. §§ 166, 168, 169, 170; 2 Pomeroy's Equitable Remedies, §§ 770, 773.

It is contended by the sixth assignment that the judgment is against the great preponderance of the evidence, in that the evidence shows that the consideration for the execution of the written agreement has failed, because such consideration was that Mansfield should procure and sell to the Johnsons the timber upon lands surrounding that purchased from Ayers, and that he had failed to do so. This was pleaded by defendants and denied by plaintiff, and the issue thus formed was submitted to the jury, who upon sufficient evidence found against defendants in this regard. The assignment is overruled.

We will not prolong this opinion by a discussion of each of appellants' assignments of error. We think it is sufficient to say that we have carefully examined all of them and find that no reversible error has been pointed out in either of them.

The judgment of the court below is affirmed.

Affirmed.