## REYNOLDS *vs.* O'NEIL.

1. Equity will decree specific performance of a contract for the sale of land, as follows : "Received, J. C., March 10th, 1874, from Mr. D. R., the sum of $400, on account of his purchase of the house and lot known and situate," &c., "sold to him this day for the sum of $4000. It is agreed that if the title of the above property should prove unsatisfactory, the above sum shall be returned to said D. R. (Signed), J. M. G., agent for T. O., owner."

2. Want of mutuality constitutes no valid objection to decreeing specific performance of such a contract. It is an agreement by which one party binds himself to the other, in the manner required by law, to convey land on demand (provided the demand be made within a reasonable time); for a fixed price, to be paid in cash, and receives part of the purchase money at the time of making the contract, with the understanding that it is to be returned to the buyer if the title prove defective.

3. The provision that the vendee was to have a right to a return of the $400 paid on account of the purchase money, in case he should not be satisfied with the title, is in effect no more than a stipulation on the part of the defendant to return the money paid, in case the title should prove to be such as the vendor ought not to be required to accept.

4. There is no want of certainty in the contract by reason of the omission to fix a time for the payment of the balance of the purchase money and the delivery of the deed. Equity will construe the contract as providing for the delivery of the deed on demand, within a reasonable time, accompanied by a tender of the balance of the purchase money.

5. That no tender of the balance of the purchase money was made till after the commencement of the suit, cannot avail the defendant, under the circumstances of this case.

6. *Held,* that the agent had authority from the defendant to sell the property at the price named in the contract.

On final hearing, on pleadings and proofs.

*Mr. J. Garrick,* for complainant.

*Mr. M. T. Newbold,* for defendant.

THE CHANCELLOR.

This is a suit for specific performance, to compel the defendant to convey to the complainant a lot in Jersey City, which the latter purchased of John M. Gibson, as agent of the former. The authority of Gibson to sell the property is denied by the defendant, and it is also insisted, on his behalf, that conceding that Gibson had authority to sell, the contract entered into by him, with the complainant, is not such a one as this court will compel the defendant to perform. The objections made to it are that it lacks both mutuality and certainty. The contract in question was in writing, and was as follows: "Received, Jersey City, March 10th, 1874, from Mr. Dominick Reynolds, the sum of four hundred dollars, on account of his purchase of the house and lot known and situate as No. 164 Morgan street, Jersey City, sold to him this day for the sum of four thousand dollars. It is agreed that if the title of the above property should prove unsatisfactory, that the above sum shall be returned to said Dominick Reynolds. "$400. (Signed) J. M. GIBSON, "*Agent for Terrence O'Neil, owner.*"

To dispose, in the first place, of the objections to this agreement: The objection on the score of want of mutuality, is put on the ground that the complainant was, by the agreement, not only left at liberty to take the property or not, as he should see fit, but was to have a right to a return of the $400 paid by him on account of the purchase money, in case he should not be satisfied with the title. That provision, however, is in effect no more than a stipulation on the part of the defendant to return the money paid, in case the title should prove to be such as the complainant ought not to be required to accept. The agreement, read in the light of

judicial construction, is one by which one party binds himself, in the manner required by law, to the other, to convey land on demand (provided the demand be made within a reasonable time,) for a fixed price, to be paid in cash, and receives part of the purchase money at the time of making the contract, with the understanding that it is to be returned to the buyer if the title prove defective. Want of mutuality constitutes no valid objection to decreeing specific performance of such a contract. *Fry on Spec. Perf.*, § 291; *Van Doren v. Robinson*, 1 C. E. *Green* 259; *Green v. Richards*, 8 C. E. *Green* 32. In support of the objection, based on alleged want of certainty in the contract, reliance is placed on the omission to fix a time for the payment of the balance of the purchase money and the delivery of the deed. The court will construe this contract as providing for a delivery of the deed, on demand, within a reasonable time, accompanied by a tender of the balance of the purchase money. The objection made on the face of the contract cannot prevail.

But it is insisted, in this case, that as there was no tender by the complainant until after the commencement of this suit, he is not entitled to relief. The testimony shows that immediately after the contract was signed, Gibson sent a messenger to the defendant to inform him of the sale, and that the defendant declared to the messenger that he would not be bound by the contract, and would not sell the property at all. It also appears, that in a very few days thereafter, Gibson went to see the defendant on the subject, and that in the interview which then took place between them, the defendant utterly refused to sanction the sale, and on Gibson's saying that he had received $400 on account of the price, and had given a receipt for it, the defendant declared that he would not give a title for the property. It also appears that, between the date of the receipt and the 15th of April following, the complainant frequently called at Gibson's office in reference to the conveyance, and was informed by him of the defendant's refusal to be bound by the contract, and on that day he went to Gibson's office to take the deed, but was then again told

by Gibson that the defendant utterly refused to comply with the contract, and that the complainant, in order to get title to the property, would have to bring suit. The bill was filed on the 10th of May, 1874. In June following, the complainant tendered to the defendant the balance ($1600) of the purchase money over the amount of the mortgage on the property, but the defendant refused to accept it, on the ground that Gibson had no authority to sell. The complainant is in no laches.

It remains to consider the question, whether Gibson had authority to sell. The defendant testifies that an attempt was made by Gibson to sell the property for him, at public auction, in February, 1874, which was unsuccessful, and that it was then determined between them that the defendant should repair the house, and that Gibson should again endeavor to sell it at auction some time about the middle of April following; that he told Gibson not to sell the property; that he would go and have it repaired, and would inform Gibson when he should have put it in order; that he went immediately home and commenced the repairs, and that after he had been engaged at them a couple of days, Gibson sent him word that he had sold the property to the complainant. He adds that he answered that he had given no authority to sell for that price, and that the purchaser could not have the property.

It appears that Gibson, after the auction, advertised the property in the newspapers, and that shortly before the sale to the complainant, he obtained an offer for it, at the price of $4000, from a man living in Jersey City. He communicated that offer to the defendant, who was desirous of accepting it. The offer, however, was withdrawn, on the ground that the property was not worth that price. That the offer was made to Gibson, and by him communicated to the defendant, and that the latter went to Gibson's office to endeavor to effect the sale on that offer, is clearly proved. The defendant's testimony on this subject is of a character to subject him to the charge of disingenuousness. Gibson swears that when

the defendant left him, on that occasion, he said, "I leave the matter entirely in your hands, to do the best you can—to get all the cash you can above the mortgage on the property;" that the mortgage was $2000; that he then told the defendant that he was advertising the property in the papers at $4500, and asked him if he would sell it for $4000, $2000 cash and $2000, the amount of the mortgage on it, and that the defendant replied, "yes, that will do." The defendant's son, indeed, testifies that, four or five days after the auction, and while they were painting, he went, by his father's directions, and told Gibson that they were painting, and that he was not to sell the property, and that Gibson answered, "that is right; that's the best." Gibson denies that he received this message. His version of the matter is, that he was passing the place where the defendant's son worked, and the latter told him that his father was going to repair the house, and that he replied, "all right," and passed on. The defendant not only does not corroborate his son's testimony in regard to the message to Gibson, but makes no reference whatever to it. And, indeed, if, as the defendant says, he had told Gibson, immediately after the auction, not to sell the property, and it was understood between them that the defendant was to repair the property, and it was to be put up at auction in April, there seems to be no reason why such a message should have been sent to Gibson. The repairs and painting appear to have been confined to the blinds, which were in a bad condition, and to have been of but little cost. The weight of the evidence is, that Gibson had authority from the defendant to sell the property at the price at which the former sold it to the complainant.

The complainant is entitled to the relief he seeks.