On May 28, 1942, the plaintiff, Louis Dewenter, entered into an agreement with John Mott, the defendant, to purchase from him, for the sum of $1,800 cash, a certain piece of real estate in the City of New Orleans described by the municipal number 3655-57 Tchoupitoulas St. The agreement was drawn and signed in the usual form, no deposit being made at the time. It contained this stipulation, "If title is good and merchantable or can be made so within a reasonable time, I agree to accept title to the above property and pay the balance of the purchase price upon passing act of sale before __________, notary public, at my expense within forty-five (45) days after the date hereof."
On June 23, 1942 the parties to the agreement appeared before Allain C. Andry, the notary selected by Dewenter for the purpose of passing the act of sale as provided in the agreement. When the notary, as he had to, asked Mott, the seller, what his marital status was, Mott very frankly told him that whilst he had not yet been served with process, he understood that his wife recently filed a suit for divorce against him. Upon receiving that information the notary told him that he would have to obtain his wife's signature to the sale of the property as it belonged to the community which existed between him and his wife which had not yet been dissolved, or else he could not pass a valid title.
It developed that the information which Mott gave the notary on that day was correct as a few days previously, that is June 12, 1942, his wife had filed a suit for separation against him. Nothing was done by the defendant to try to obtain his wife's signature neither did he inform anyone about the progress of the litigation between him and his wife although there is testimony to the effect that the matter was called to his attention by the plaintiff and it is shown that the notary also wrote him a letter on December 23, 1942 stressing the fact that they were waiting for him to appear in his office with his estranged wife in order to complete the sale.
From the record and the suits involving the litigation between defendant and his wife, it appears that there was a judgment in favor of his wife granting her a separation from bed and board which was signed on November 30, 1942. It does not appear whether the plaintiff obtained that information but on February 16, 1943, evidently in order to protect whatever rights he had under his agreement with the defendant, he had the same recorded in the conveyance records of Orleans Parish. Things appear to have remained in statu quo until January 22, 1944 when an act of partition was passed between the defendant and his wife under which she was allotted certain property which the community owned in Baton Rouge and he, the defendant, was given a clear title to the community property which they owned in the city of New Orleans, including the one which he was under contract to sell the plaintiff. The following March the defendant obtained a final divorce from his wife.
On December 22, 1944 despite the fact that his contract with plaintiff had been recorded in the conveyance records, defendant entered into a new contract with a party by the name of Whozell A. Anders to sell him the same property for $2,400 cash. On learning of this plaintiff informed the office of Latter Blum in New Orleans, who was handling Anders' end of the transaction about his contract and Latter Blum in turn notified the defendant about the situation that existed relating to the property. Thereupon, on January 25, 1945 plaintiff made a written demand on the defendant to perform the contract of May 28, 1942 and upon the latter's refusal this suit for specific performance was instituted on May 22, 1945.
The defendant first filed exceptions of no right or cause of action which were overruled in the district court. He then filed an answer in which he presented practically the same issues of law to the court in defense *Page 446 
of plaintiff's action stressing particularly the point that plaintiff had lost his right for specific performance by reason of the long and unreasonable time which had elapsed before he made specific demand for compliance with the contract.
There was judgment in the court below in favor of the plaintiff ordering the defendant to comply with the contract of May 28, 1942 whereupon this appeal was taken.
The exception of no cause of action is based on the proposition that the agreement of May 28, 1942 expired, by its own terms in 45 days and that nothing was done by plaintiff, nor was any consideration paid to keep it open for a longer period than was stipulated.
[1] Under the facts as they appear from the petition, plaintiff was ready and willing, on June 23, 1942, which was within the 45 day period, to comply with his obligation under the contract to accept title, provided it was good and merchantable, and pay the purchase price. In fact he had made all necessary arrangements with the notary and they were actually in the latter's office to pass the act of sale when it developed from information imparted by the defendant himself that he could not at that time give a good and merchantable title as he had to under the agreement, to the whole of the property. The petition next alleges that the notary then informed them both, plaintiff and defendant, that the act of sale "would have to be postponed until the matter of defendant's marital status was settled." This had the effect of extending the agreement, not because of fault or failure on the part of the plaintiff who was ready and willing to comply, but as a favor to the defendant in order to give him "a reasonable time" as also provided for in the contract, within which to make the title to the property good and merchantable. Clearly, in our opinion, under such facts, no consideration for an extension was due by the plaintiff nor was a formal tender of the purchase price necessary.
[2] When we come to consider that phase of the case on the merits in which the question of default is involved, we find from the testimony of the plaintiff, and that of the notary, that plaintiff had made all necessary financial arrangements and that he had the cash money with which to pay the purchase price on the day appointed for passing the act of sale. We find further, from the testimony of the notary, that apparently, in order not to prolong the delay involved in the litigation which defendant's wife had instituted against him, he told defendant that if he would get his wife to join him in the act, the sale could be completed. The notary states that the parties then left his office with the understanding that the defendant would attempt to obtain his wife's signature so that title could be passed. Whether he made any such attempt or not, and if he did, whether or not his wife refused to join him in an act of sale, does not appear from any testimony in the record. Obviously he either refused to comply with the request to have her sign or else he complied, and his wife refused.
Plaintiff testified that after the meeting of June 23, 1942 in the notary's office, defendant came to him and asked him not to sue him, that as soon as he would obtain a divorce from his wife, he would complete the sale as in the partition between them he would get the property in New Orleans and his wife would get that in Baton Rouge. Under the circumstances it would have been futile for plaintiff to place defendant in default by tendering the purchase price. It was evident that defendant's wife would not sign an act of sale in order to facilitate his giving a good and merchantable title and the only recourse that was left to the plaintiff was to await the outcome of the litigation involving a separation between defendant and his wife. Under the law any judgment of separation between them would have been retroactive as of the date on which suit had been filed, which in this case was June 12, 1942. See Revised Civil Code, Article 2432.
[3] Counsel for defendant next contend that plaintiff's inaction from the day the sale was to be executed until he filed the present suit to enforce performance has given rise to a presumption that the contract had been rescinded. They cite authority to the effect that when both parties to a contract like this fail to take any affirmative action within a reasonable time to default *Page 447 
the other there is an inference of rescission. The principle is one familiar to the common law but appears to have received the approval of the Supreme Court. See Joffrion v. Gumbel,123 La. 391, 48 So. 1007, 1012. As we view it, the matter all relates to what is to be considered a "reasonable time" within which a party must act under the circumstances, and in determining that question the court must necessarily be guided by what are the peculiar facts and circumstances in each case. Indeed, in the cited case of Joffrion v. Gumbel that very rule is quoted from common law authorities as follows: "The general rule is that he who seeks performance of a contract for the conveyance of land must show himself ready, desirous, prompt, and eager to perform the contract on his part. Therefore unreasonable delay in doing these acts which are to be done by him will justify and require a denial of relief. No rule respecting the length of delaywhich will be fatal to relief can be laid down, for each casemust depend on its peculiar circumstances." (Italics ours.)
With that rule in mind let us briefly analyze the facts in this case. In the first place who is it or what is it that caused the delay? Certainly it was no act of the plaintiff for on June 23, 1942 less than a month after the date of the agreement to sell he was ready and willing to comply with his obligation and appeared before a duly qualified notary public for that very purpose. He was not called on after the notary had informed the defendant that he could not convey a proper title on that day to tender the purchase price because his contract was to pay the price only after a good and merchantable title could be made. He could not have enforced specific performance of the contract at that time because of the pending litigation between the defendant and his wife. No matter what would be the final judgment in that litigation we have seen that under the law it would be retroactive as of June 12, 1942, the date on which the suit was filed for separation against the husband. The defendant seems to have been given an alternative by the notary, apparently with the approval of the plaintiff, to have the act of sale signed by his wife, but again the defendant did not deem it proper to ask his wife or if he did ask her was unable to obtain her consent to do so. Later on he asked plaintiff to withhold suit against him until he had obtained a divorce after which he would execute the sale.
It was not until November 30, 1942 that the judgment for separation between the defendant and his wife was signed and even then that judgment did not establish the status of the property because that was done only in the following January by conventional act of partition. In the meantime however plaintiff had the notary write defendant demanding action and failing to hear from him he had the contract recorded in the conveyance records of Orleans Parish. All of this certainly evidenced anything but an intention on his part to abandon his rights thereunder or to have agreed to a rescission.
The record bears no proof as to what information plaintiff ever received of the final outcome of the litigation between defendant and his wife. Regardless what that outcome was however he seemed to have been determined to have his rights under the contract enforced when he placed the same of record thereby giving public notice to anyone dealing with the property that they were dealing with it subject to whatever rights he had. It was in spite of all this that the defendant entered into a subsequent contract on December 22, 1944 to sell the property to some one else whereupon plaintiff made a written demand on him for performance on January 25, 1945 and followed this by the present suit which he instituted on May 22, 1945.
The case therefore is different on the question of the lapse of time from those cited in brief of counsel for defendant. For instance in the Joffrion case there was a lapse of more than 10 years. In Macheca v. Bernard, 167 La. 573, 119 So. 878, the lapse was approximately 7 years in Goudeau v. Daigle,37 F. Supp. 843; Id., 5 Cir., 124 F.2d 656, nine years. In Cresson v. Earhart, La. App., 164 So. 152, the court found that the agreement itself stipulated that time was to be the essence of the contract and refused to order specific performance after a delay of two years or more. *Page 448 
[4] In view of the rule stated in the Joffrion case to the effect that each case must be governed by its own facts and circumstances any comparison of cases on the point of delay could only serve as a guide and none would be controlling. Under all the facts and circumstances of this case there was no unreasonable delay on the part of the plaintiff and we conclude that the lower court was correct in ordering the defendant to comply with the contract and give plaintiff title to the property as he had agreed to after a good and merchantable title could be passed.
For the reasons stated the judgment appealed from is affirmed at the costs of defendant, appellant herein.
DORE, J., recused.