## GENERAL AMERICAN LIFE INS. CO. v. NATCHITOCHES OIL MILL, Inc.

### No. 11785.

Circuit Court of Appeals, Fifth Circuit.
March 11, 1947.

Rehearing Denied April 7, 1947.

McCORD, Circuit Judge, dissenting.

---

· T. W. Holloman, of Alexandria, La., for appellant.

Grove Stafford, of Alexandria, La., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was by the seller for specific performance of a written contract[1] for

---

[1] Prepared and tendered by the buyer, as material it is as follows:

"*The insurance company did and does by these presents bind and obligate itself to sell and convey with full warranty of* title unto the Natchitoches Oil Mill, Ino. the following described property, to-wit:

"A certain tract of land containing four acres, more or less, located on the Brookwater Plantation in Concordia Parish,

the sale of a gin house and site. The claim was that plaintiff, while not in any respect in default and while the agreement was in full force and effect, had tendered the defendant a warranty deed and a policy of title insurance as agreed, but that defendant had refused to accept the deed and pay the purchase price.

Defendant moved to dismiss because the complaint failed to state a claim upon which relief could be granted, and, after hearing, the court deferred ruling until the merits had been heard. The defendant thereupon answered, admitting the execution of the contract and that defendant had agreed in writing that plaintiff had complied with its obligations to secure written agreements from the tenant purchasers. It pleaded, however, that at the time it did so agree, defendant did not know that many of the prospective tenant purchasers were unreliable and financially irresponsible, and that more than half of them had moved off the land in 1944. Not denying that plaintiff had tendered the deed as alleged, defendant placed its reliance on the clause in the contract referring to November 1st. Pleading that the contract fixed that date as the termination date of the contract, if the suspensive condition it referred to was not by then complied with, it insisted that because the sales of the plantation were not completed by November 1st, the contract was at an end and when the sales were later completed and the deed tendered, the defendant was

---

Louisiana, and being known as the gin site, the said tract being bounded on one side by the right of way of the L. & A. Railway Company and on the other three sides by well defined fences, together with a Four Stand Continental Gin, a seed house, a cotton house, together with a tractor and blower attachment, a blacksmith shop, a five room residence, a well and implement house, together with all machinery, appurtenances and equipment thereto pertaining or belonging. It is understood that this sale includes all spare parts and repair parts presently located at or on said gin site.

"*And the Natchitoches Oil Mill binds and obligates itself to purchase the said above described gin and gin site from the insurance company for the price of Thirty Thousand Dollars in cash.*

"It is understood and stipulated by and between the parties hereto that this sale and purchase is contingent upon a sale of the remainder of the Brookwater Plantation by the insurance company to Gilbert K. Alford, agent and other assignees of his, who are presently in the process of purchasing the said plantation with a loan from the United States acting through the Farm Security Administration of the Department of Agriculture. It is especially stipulated and agreed between the parties that in the event the sale of the remainder of the Brookwater Plantation to Gilbert K. Alford and his assignees should not be consummated for any reason (whatever), then this agreement by and between the Natchitoches Oil Mill, Inc. and the Insurance Company shall be null and void.

"It is further agreed that in the event the sale of the remainder of the Brookwater Plantation to Gilbert K. Alford and his assignees 'is not consummated on or before noon on November, 1943, *then and in that event* the Natchitoches Oil Mill shall *have the right, at its option, to cancel and avoid this contract and agreement; or the said oil mill may, if it so desire extend this agreement for an additional six months* without the payment of any consideration.'" (Then follows an agreement by the Insurance Company to furnish a policy of title insurance and a general warranty deed with full description.)

"*It is further stipulated that within five days after Gilbert K. Alford and his assignees have taken title to the Brookwater Plantation from the General American Life Insurance Company that the said Insurance Company will tender to the Natchitoches Oil Mill at the office of John Dale, attorney, Vidalia, Louisiana, (C.L.H., B.R.S., D.E.J.) a warranty deed covering the aforesaid gin and gin site. And the Natchitoches Oil Mill binds and obligates itself to pay the cash consideration of Thirty Thousand Dollars to the said Insurance Company within forty-eight hours after the said deed is tendered to it.* (All emphasis supplied.) (Then follows an agreement that Alford and his various assignees will execute written agreements covering portions of the Brookwater Plantation, binding and obligating them to gin the cotton produced thereon, with the Natchitoches Oil Mill for a period of five years, and that if Alford and ninety per cent of his tenant purchaser-assignees do not sign and execute the said agreement within sixty days the agreement shall be null and void and the Oil Mill will no longer be bound to purchase the gin.)

no longer obligated to accept the deed and pay the purchase price.

Plaintiff, by an amended and supplemental complaint, sued for taxes and insurance premiums it had been compelled to pay since the rejection by defendant of the property.

The parties stipulated substantially all of the material facts.[2] In addition to the material facts stipulated, there was oral evidence, most of it offered and received over defendant's objection. This evidence in effect established that defendant did nothing on November 1st, to avail itself of either of the options granted it, (1) to denounce the contract, or (2) to ask for a six months' extension of it, and nothing was said by it to indicate that it regarded or claimed that the contract was off, but on the contrary, it continued to· deal with plaintiff in complete recognition of the contract's continuing existence. In December, plaintiff sent defendant a form of deed, and defendant returned it approved, and when on January 24th, after plaintiff had completed the sales to the·plantation purchasers, it tendered the deed to defendant. At no time until after defendant had received the tender of the deed did it say or do anything to indicate that it was not, or would not be bound to carry out its contract to purchase.

At the conclusion of all the evidence, the district judge gave his opinion. First he construed the November 1st date set out in the contract attached to the complaint, not as an option date on which defendant had two options (1) to cancel and avoid the agreement or (2) to extend it for "an additional six months", but as a date when the contract would expire of its own force unless the suspensive condition as to effecting sales of the plantation had been by then complied with. So construing it, he determined that the complaint in not alleging that plaintiff was in a position on November 1st, to insist upon performance, failed to state a right or cause of action, and that defendant's motion to dismiss it should be sustained. In addition, he held that if wrong in this view, and the contract was still in force when plaintiff tendered the deed, the defendant was justified in refusing to buy because of the unsatisfactory character of the tenant purchasers to whom plaintiff had sold the land.

Appellant is here insisting that the court erred in both respects. Appellee, insisting that the judgment on the pleadings was

---

[2] (1) The contract was made as alleged.

(2) Subsequent to its execution the parties agreed that the sale would be closed in Alexandria instead of Vidalia.

(3) On or about January 24, 1944, plaintiff tendered to defendant a warranty deed and title insurance binder as called for in the agreement.

(4) The tender was made within five days after various assignees had taken title to the plantation from the plaintiff, but defendant refused to accept the deed and pay the consideration.

(5) Between November 1, 1943, and February 4, 1944, the defendant gave no written notice to the plaintiff (a) of its desire to cancel and avoid the contract to buy and sell, or (b) of its desire to extend the agreement for an additional six months.

(6) No suit was filed by the defendant seeking to avoid the contract to buy and sell.

(7) Plaintiff was on Jan. 24, 1944, and at all times since has been, ready, able and willing to deliver to defendant title to the property covered by the sales agreement.

(8) All of the plantation except that covered by the sales agreement for the gin was sold by plaintiff to the thirty-seven Farm Security Administration tenant-purchasers by deeds filed and recorded Jan. 22, 1944, for a total cash consideration of $107,500.00 paid by the Administration.

(9) With one exception, these are the same thirty-seven Farm Security Administration tenant-purchasers who had signed the 37 ginning agreements, as to which defendant had agreed in writing that they complied with the contract.

(10) The sums set forth in the second amended complaint have been paid by plaintiff for sales and insurance premiums.

(11) The defendant took possession under an agreement and operated the gin during the 1943 cotton ginning season and retained possession of it after November 1, 1943, and until Dec. 31, 1943, when it surrendered possession as· required by the agreement.

right and that the evidence offered on the facts was immaterial, urges upon us that if wrong in this, still specific performance is not a matter of right, and the district judge had the right in the exercise of his discretion to refuse it on the merits.

We do not think so. On the pleadings the case is a very simple one of a contract clear, definite and precise in its terms, binding each of the parties to it, the one to sell, the other to buy,[3] "within five days after Alford and his assignees have taken title to Brookwater from the insurance company". No time limit was fixed for the taking of such title and the closing of the contract of purchase on the gin, five days thereafter. The law, therefore, fixed a reasonable time for doing so and bound defendant to take the property if the deed was tendered within such time.[4] The November 1st date in the contract did not purport to be a termination date. It was merely an option date on which there was extended to defendant two alternative options, one to declare the contract at an end, the other to extend it for six months. It is not claimed that the defendant took up either option, and it follows that after November 1st passed with nothing done to take the option up, the contract continued in force and effect for a reasonable time as though that date had not been written in it. The evidence establishes that the

delay was due to the difficulty in getting the tracts properly surveyed. It is not claimed, there is no basis for the claim, that when the deed was tendered more than a reasonable time had elapsed for performing the suspensive condition. It is clear then that there is no sound basis for the claim that plaintiff was in default when it tendered the deed, and defendant was, therefore, not obligated to accept the tendered deed and pay the purchase price.

As to the alternative contention, that even if the contract was in force when the deed was tendered, still the remedy of specific performance is not a matter of absolute right and it was within the court's discretion to refuse it, we think defendant stands no better. It is true in Louisiana, as elsewhere, that whether specific performance will be granted rests in the sound discretion of the court.[5] But it is true in Louisiana, as it is elsewhere, that the discretion exercised must be a sound and informed discretion and not a capricious or unsound one, that is, the judge must be able to give a sound reason for refusing the remedy. Where, as here, the contract deals with land, is clear and unambiguous in its terms, and plaintiff's performance is unexceptionable, it was not the exercise, but the abuse, of discretion to refuse performance.[6] The facts found by the district judge as justifying defend-

---

[3] "The insurance company did and does by these presents bind and obligate itself to sell and convey with full warranty of title unto the Natchitoches Oil Mill, Inc., the following described property, to-wit: * * *.

"And the Natchitoches Oil Mill binds and obligates itself to purchase the said above described gin and gin site from the insurance company for the price of Thirty Thousand Dollars in cash."

[4] 49 Am.Jur., p. 41; DeWenter v. Mott, La.App., 27 So.2d 444; Johnson v. Mansfield, Tex.Civ.App., 166 S.W. 927; Ullsperger v. Meyer, 217 Ill. 262, 75 N.E. 482, 2 L.R.A.,N.S., 221, 3 Ann.Cas. 1032; Williamson v. Neeves, 94 Wis. 656, 69 N.W. 806; Reynolds v. O'Neil, 26 N.J. Eq. 223; Wilkins v. Somerville, 80 Vt. 48, 66 A. 893, 11 L.R.A.,N.S., 1183, 130 Am.St.Rep. 906; Pearson v. Horne, 139 Ga. 453, 77 S.E. 387; Louisiana Civil Code, art. 1764.

[5] Louisiana Civil Code, arts. 1926, 1927; 49 Am.Jur., Specific Performance, Sec. 9.

"As has been said, when a contract of which equity has jurisdiction conforms with such equitable principles, it is as much a matter of course for a court of equity to decree specific performance as for a court of law to give damages for a breach of the contract."; and cases cited.

[6] Girault v. Feucht, 117 La. 276, 41 So. 572, holds that: "Reading this article (1927) and Art. 1926 together, that is to say, reading the word 'may' in conjunction with the twice used word 'entitle,' to which it stands in corelation, the word 'may' must be given the meaning of 'shall' and the articles must be read that where damages are inadequate relief, the court, not 'may,' but 'shall' or 'must' order specific performance." Dart Civil Code, Vol. 1, p. 1017.

Cf. also Gulf Refining Co. of Louisiana v. Hayne, 148 La. 340, 86 So. 891, 893: "Specific performance * * * being the more complete remedy, there can be no reason why it should not be allowed in

ant's refusal to perform and the judge's refusal to compel him to, do not at all support his action. The record establishes without dispute that the defendant, through its president, Hayne, was at all times fully cognizant of the nature and character of the Farm Securities Administration experiment and its proposed purchasers.

After plaintiff had changed its course from the one it had first decided upon, of selling the plantation as a whole, including the gin, and had agreed with Hayne, acting for defendant, to withhold the gin from the sale to Alford and sell it to the defendant, the matter of preparing and procuring contracts from the Farm Securities Administration tenant-purchasers to gin their cotton with defendant was handled in consultation with defendant's counsel who drew the contracts and mailed them to the supervisor of Farm Securities Administration. Throughout the ginning season the defendant managed and operated the gin. It knew the kind of people the tenant-purchasers were, it knew the nature of the project and that it was a typical government experiment to help out indigent farmers. It knew the entire purchase price was being paid with public moneys and that the purchasers were not putting up a thin dime of it.

The record makes it clear that the very basis of the agreement for the sale of the gin was that the tenant purchasers would be persons purchasing under Farm Securities Administration auspices, indigent farmers who couldn't fend for themselves but must have government aid. Mr. Hayne knew this when he put his counsel to preparing the contracts for these tenant purchasers to sign. He knew this when in writing he accepted these contracts for the defendant as in full compliance with the provisions of the contract requiring these agreements to be signed within sixty days. He comes with poor grace, after plaintiff had fully performed and tendered the deed, putting forward for the defendant

as avoiding its obligation to pay the agreed price the supposed unsatisfactory character of the persons he had accepted written agreements from and had agreed were acceptable as tenant purchasers. This is especially so in the light of his testimony that he really wanted the gin, that he had negotiated and figured on that gin for the last two years, and that he still wanted the gin but not at the price he had agreed to pay.[7]

After plaintiff had performed the suspensive conditions in respect of these purchasers precisely as agreed upon, defendant, then figuring, as Mr. Hayne had testified he was, on getting the gin at a less price than it had agreed to pay, cannot be heard, as in refusing to accept the tender it sought to do, to question as unwise or injudicious the conditions it had agreed to and to refuse performance because it now thought they were. It is true enough that it is settled law that a suit for specific performance to be successful must be based upon a clear and definite contract and fair and exact compliance with it by the plaintiff. It is equally settled law that where land is involved and the contract for its sale is clear and fair and has been completely performed by the party seeking performance, the other will be compelled to perform. None of the cases defendant cites, where specific performance has been refused, are cases where both of these conditions have been met. They are all cases, particularly Goudeau v. Daigle, 5 Cir., 124 F.2d 656, decided by this court, where plaintiff had failed to perform his part of the contract.

The judgment denying specific performance was erroneous. It is reversed and the cause is remanded for further and not inconsistent proceedings.

McCORD, Circuit Judge (dissenting).

Decision should turn upon the meaning and legal effect of the following provision of the contract: "It is further agreed that in the event the sale of the remainder of

---

cases where it is available and is demanded."

[7] Hayne testified: "I didn't intend to sign the deed, but I did have an idea of buying it sometime or other,. * * * "

"Q. But all of this figuring that you did was after the program had fallen through and you were attempting to get it at a smaller price? A. Yes, at a price at actually what it was worth."

the Brookwater Plantation to Gilbert K. Alford and his assignees 'is not consummated on or before noon on November 1, 1943, then and in that event the Natchitoches Oil Mill shall have the right, at its option, to cancel and avoid this contract and agreement; or the said oil mill may, if it so desire extend this agreement for an additional six months without the payment of any consideration.' "

The sale of the remainder of the Brookwater Plantation to Alford and his assignees was not consummated by November 1, 1943. What then was the situation under the contract? I think it clear that on November 1st the oil mill had two choices: (1) to cancel and avoid the contract, or (2) to extend it for a period of six months.

To extend the contract for an additional six months from November 1, 1943, the oil mill would have had to give *timely, written notice* to the insurance company. In Louisiana, agreements to buy and sell immovable property must be in writing, and any extension or modification of such agreements must likewise be in writing and may not be established by *parol* evidence. Louisiana Civil Code, Arts. 2275, 2276, 2462. Roe v. Maniscalco, 174 La. 526, 141 So. 49; Barchus v. Johnson, 151 La. 985, 92 So. 566; Oeschner v. Keller, 134 La. 1098, 64 So. 921; In re Industrial Homestead Ass'n, La.App., 198 So. 528.

In the court below the insurance company contended that since the oil mill did not give notice of an intention to cancel and avoid the contract on November 1, 1943, it was thereby automatically extended for six months.[1] Now on appeal counsel for appellant make no such contention but say "It may be that a writing would have been necessary in order to extend the contract for the fixed period of six months * * * it is not necessary to decide the question." In effect, they now say that in the absence of an express no-

tice of avoidance the contract lived on for a reasonable time, and that tender of the deed nearly three months later on January 24, 1943, was within a reasonable time.

It is without dispute that the title to the lands did not pass to Alford until January 22, 1944, and that the deed was not tendered until January 24, 1944, nearly three months after the date fixed in the contract. By ignoring the significant and important date of November 1, 1943, in the contract, my brothers, in effect, read out of the contract the provisions "* * * *then in that event the Natchitoches Oil Mill shall have the right, at its option, to conceal and avoid this contract and agreement; or the said oil mill may, if it so desire extend this agreement for an additional six months* without the payment of any consideration." The majority opinion goes on to hold that, "On the pleadings the case is a very simple one of a contract clear, definite and precise in its terms, binding each of the parties to it, the one to sell, the other to buy, 'within five days after Alford and his assignees have taken title to Brookwater from the insurance company'. No time limit was fixed for the taking of such title and the closing of the contract of purchase on the gin, five days thereafter. The law, therefore, fixed a reasonable time for doing so and bound defendant to take the property if the deed was tendered within such time."

It becomes manifest that in adopting the *"reasonable time"* theory, the majority opinion has not only read out of the contract the November 1st date, but has also substituted in its stead a *"reasonable time"* in which plaintiff might present its deed. If a *"reasonable time"* may be supplied, what then was the necessity for the contract to provide for an additional six months from November 1, 1943, if the defendant wanted it?

The majority opinion declares that the contract is clear, definite and precise in its

---

[1] After the trial court had rendered its opinion, D.C., 64 F.Supp. 816, and entered findings of fact and conclusions of law, the plaintiff requested a new trial and moved for amendment of the findings. Paragraph 4 of the motion requested a finding that, "When it did not exercise its right to cancel, it automatically exercised its desire and the contract, by its writing was extended. Its silence and inaction were a declaration that it stood on the extension, as it did not cancel."

terms.[2] If this be true, the Louisiana law, as pointed out above, is settled that *parol* evidence is not admissible to vary it. The trial court recognized this rule after it had erroneously admitted much evidence over the defendant's objections. The majority opinion, however, considers much of the evidence in the discussion on the merits.

It is my view of the case that we have before us a simple executory contract to buy and sell, which was not completed and which could not have been completed because the insurance company had not made the sales to Alford by November 1, 1943. By the terms of the agreement the obligation to buy and the obligation to sell was to depend upon the sales to Alford within the time limit of November 1, 1943. When that day arrived, the oil mill could have kept the contract alive only by giving written notice of its election to extend the contract for an additional six months. Not having exercised its option to extend by giving such notice, the contract fell of its own weight and the oil mill was no longer obligated to buy and the insurance company was no longer obligated to sell the gin. Cf. Moresi v. Burleigh, 170 La. 270, 127 So. 624; Barchus v. Johnson, 151 La. 985, 92 So. 566; Standard Oil Co. of Louisiana v. Milholland, 167 La. 707, 120 So. 59; Elmer v. Hart, 121 La. 537, 46 So. 619.

To me this is the acid test which points out clear as crystal the fallacy of the majority opinion: If the shoe was on the other foot, and on January 24, 1944, the insurance company had elected not to sell the gin, could the oil mill have successfully demanded specific performance of the contract? Certainly not. The insurance company could have defended on the ground that the oil mill had not extended the contract for six months *by timely, written notice as it had a right to do*. It is my considered judgment and I am con-

vinced that when the oil mill did nothing on November 1, 1943, it forfeited its right to force the insurance company to sell, and relieved the oil mill of its obligation to buy under the contract. After November 1, 1943, the insurance company could have sold the gin to whom it pleased and the oil mill would have had no basis for complaint.

I think the trial court correctly refused to decree specific performance and that the judgment should be affirmed.

I respectfully dissent.

---

[2] A finding of clearness and preciseness of the terms of the contract is necessary to avoid the rule that specific performance will not be decreed where a contract is ambiguous. 49 Am.Jur., Specific Performance, § 22, p. 34. Also compare Goudeau v. Daigle, 5 Cir., 124 F.2d 656, which points out that the remedy of specific performance is not favored in Louisiana and that the granting or denial of specific performance rests within the sound discretion of the trial court. I am not at all convinced that the case is a "very simple one of a contract clear, definite and precise in its terms."