**ERISTAVI–TCHITCHERINE et al. v. LASSER et al.**

No. 11978.

Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1947.

J. M. Flowers, John M. Murrell and Edward E. Fleming, all of Miami, Fla., for appellants.

R. H. Ferrell and A. N. Spence, both of Miami, Fla., Charles Danton and James Lathero, both of Miami Beach, Fla., and Samuel H. Rubin, of Detroit, Mich., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appealing from a judgment rendered April 24, 1947, for specific performance granted on the pleadings,[1] appellants are here insisting that the case was not one for determination on the pleadings but for trial on the merits and that, upon proof of

---

[1] This long drawn out pleading controversy running through 233 printed pages was begun by the filing on April 24, 1945, of a bill of complaint against the appellees, narrating the transactions and dealings which appellant Tchitcherine, as the owner of substantially all the stock of the Deauville Corp., had had with appellees, and characterizing them as attended on defendants' part with fraud and wrongdoing.

These included the execution of a sales contract between Deauville Corp., as seller, and Winkel and Lasser, as buyers, the later "abandonment of the sale of said property and the merger" of all of the agreements for its sale, and all transactions connected with them, into a stock deal by which the defendants Lasser and Winkel became the owners of 51 percent of the capital stock of the corporation.

There was an offer to do equity and a prayer for "rescission of all transactions and dealings" between plaintiff and defendant.

On June 8, 1945, an amended complaint was filed, followed on Sept. 24, 1946, by a second amended complaint in which the other appellants, Wm. M. F. Magraw and Ivy Blount, as trustee, joined with the original plaintiff. This complaint, going in much greater detail into the transactions and occurrences with which the original complaint dealt, charging that the conduct of the defendants had been characterized by fraud and overreaching and misdealing throughout, and offering to do equity, sought an examination of all the facts connected with the stock deal and its rescission and cancellation for fraud.

On November 4, 1946, the defendants filed their answer and their cross-complaint for specific performance of the Deauville Corp. sales contract. In these

the facts the pleadings put in issue, specific performance ought to, and would, have been denied.

On November 12, 1946, defendants moved for a judgment on the pleadings ordering rescission and cancellation of the issuance of the 51 shares of stock, specific performance of the sales contract, and an accounting between the parties as to all debits and credits between them.

On November 25, 1946, plaintiffs moved for an order on the pleadings which would require the defendants to assign and transfer to the plaintiff Tchitcherine all of their right to the 51 shares of stock and would reserve for consideration and judgment all issues of law and fact raised on the cross-complaint for specific performance.

On January 16, 1947, defendants moved for judgment in their favor on the pleadings, and on January 21st, they amended their cross-complaint to pray that the court enter an order rescinding and cancelling the stock deal and enforcing the sales contract.

On March 26, and April 24, 1947, the district judge filed what he designated as opinion orders in which he analyzed the pleadings and reached the conclusion that as to the validity and enforcibility of the sales contract, as distinguished from the stock deal, no issue of fact was made, determined that the stock ownership should be cancelled and the sales contract be specifically enforced, and ordered that by May 9, 1947, the defendants do certain acts with reference to the stock, and the Deauville Corporation execute and deliver a warranty deed to the property in suit. It was further ordered that on said day a master would be appointed to state and settle the accounts between plaintiffs and defendants arising out of and connected with their dealings and transactions, said accounting to include the issues of fraud tendered as to this stock deal.

██ We cannot agree with the district judge that the matter of the stock deal and the sales contract and the dealings of the defendants with which the pleadings deal can be separated into such water tight compartments as to authorize a decree of specific performance without a hearing on the whole case and a determination on the facts as developed on the trial as to whether in justice and equity defendants are entitled to such a decree. Specific performance is not grantable as a matter of right, but only as a matter of equity, and in the exercise of a sound and informed discretion upon a knowledge of the whole facts. Wherever, therefore, the truth of the matters bruited may lie, whether there is a real fire beneath, and accounting for, the smoke of the accusations is not a matter which ought to, or may be, determined on pleadings and without a trial of the facts. Without then determining whether the specific performance defendants prayed for should or should not be ordered upon the whole facts, we think it quite clear that it ought not to have been ordered on the pleadings but that the case should have been tried out upon all the matters tendered, for the purpose of determining whether, first, defendants have a valid contract of purchase, and, second, if they have, whether equity will specifically enforce it or leave defendants to their remedies at law.

██ The district judge, in turning his decision as he did, upon the established principle that the "clean hands" maxim[2] is not intended to, and does not, operate punitively, and that its applicability depends upon the connection between the complainants' iniquitous acts and the de-

---

pleadings they denied all charges of fraud and overreaching and, offering to surrender their ownership of 51 percent of the capital stock of the corporation, they urged that the sales contract be specifically enforced.

On November 25, 1946, plaintiffs filed their answer to the cross-complaint. In it they denied that the sales contract was a valid one, re-alleged all the matters set out in their second amended complaint and alleged that the contract was void for want of mutuality and that, because of the fraudulent acts and conduct of defendants set out in the answer and in their former pleadings in connection with the subject matter of the sales contract and the subsequent stock deal, the order ought not to be enforced.

[2] 19 Am.Jur., "Equity", Secs. 469, 473-4-5.

fendants' conduct, which the complainants rely upon as establishing their cause of action, looked too closely on the limitations, not closely enough on the scope, of the maxim. But more than that, he seemed to overlook the fact that the remedy of specific performance which defendants sought, is not accorded as a matter of right to every suitor but only upon equitable considerations[3] to those who can make out an equitable case for it. It is not meant by this to say that if plaintiffs prove what they have alleged, the court must deny specific performance. It is meant only to say that defendants are not entitled to a decree for specific performance on the pleadings. Whether the case is one for specific performance must wait upon a hearing and determination as to the facts and the decision by the chancellor upon them in the exercise of a sound and informed discretion.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

---

[3] 49 Am.Jur., "Specific Performance", Secs. 6 to 9, incl.; Cf. Goudeau v. Daigle, 5 Cir., 124 F.2d 656; General American Life Ins. Co. v. Natchitoches Oil Mill, Inc., 5 Cir., 160 F.2d 140.