BROWN, Chief Judge,
dissenting.
I,The issue presented in this case concerns the trial court’s granting of plaintiffs motion for summary judgment, which ordered the specific performance of an exchange of property located in south Bossier Parish. The written buy/sell instrument is all that exists to support plaintiffs petition and summary judgment motion. The agreement required Ms. Tolintino to give all the property that she owned in sections 3, 4, 33, and 34 to Mr. Young; in exchange, Mr. Young, a sophisticated land buyer and the drafter of the contract, would give to Ms. Tolintino not less than two acres and not less than 100 frontage feet somewhere east of Bracks Chapel Church in section 3.
With this inadequacy of the underlying written buy/sell instrument, the petition filed by Mr. Young for specific performance failed to describe with particularity the immovable property as well as any equalizing money to be exchanged. La. C.C.P. articles 1919 and 2089 require judgments which affect title of immovable property to describe with particularity the immovable property affected. The petition does not legally describe any specific property either party will exchange, and in particular, what Mr. Young will give in exchange. The quantity and dimensions of the property to be conveyed by Mr. Young are open ended and not particularly described. As such, the petition does not adequately state a cause of action, and La. C.C.P. article 927 B allows an appellate court on its on motion to dismiss for no cause of action.
|2When a petition fails to state a cause of action La. C.C.P. article 934 provides an opportunity to amend to add allegations which might complete the contract. However, in City Bank & Trust of Shreveport v. Scott, 575 So.2d 872, 873 (La.App. 2d Cir.1991), this court stated:
This court has noted that there are cases in which parol or extrinsic evidence may be admitted to aid and identify immovable property described in a written contract to sell. Parol evidence has not been allowed, however, to wholly identify the immovable. Parol has been allowed only where the courts have found that there was “sufficient body” in the initial written description so as to leave the title to immovable property “resting substantially on writing and not essentially on parol.” Jackson v. Harris, 18 La.App. 484, 136 So. 166, 169 (La.App. 2d Cir.1931).
Then, expanding further, the court paraphrased the rule of an earlier supreme court case as follows:
To aid and establish identity of a defective or ambiguous description of an immovable property in a written contract, *843 parol evidence is admissible only where the written, but defective, description distinguishes the property from other properties so as to allow the conclusion that the mutual or common intent of the parties to the writing was to deal with the particular property and not another property of the same kind or quantity. There should be sufficient substance in the written description in question so as to leave the title to the immovable resting substantially on the writing and not on parol.
Id. at 873-74. The court then concluded with the affirmation of what was apparently a dismissal of the case for no cause of action, as follows:
We hold the initial description in question here, vacant land, 21 acres, Gilliam, Louisiana, is too general and cannot serve as a base on which title to an immovable might be identified, “built up or eked out,” by extrinsic and parol evidence.
Id. at 875.
|sThe majority opinion states under “Reformation of Judgment” that “[a]s to the affect of the contract between the parties, there is no dispute as to the ‘thing’ to be sold or exchanged.” The opinion then states that “[t]he descriptions of the property ... do not describe the property ‘with particularity’ so that third parties can determine the boundaries of the properties.” The majority opinion then remands the case to the trial court “in order that the judgment be reformed to comport with La. C.C.P. articles 1919 and 2089.” This, however, is the problem. The trial court cannot reform the judgment to state the metes and bounds of the property and the amount of any equalizing money because the parties may never have reached an agreement as to exactly what acreage, frontage, or dimensions of the property were to be given by Mr. Young. The trial court cannot simply substitute what it believes would be fan[1].
Further, the agreement, which was written on the letterhead of Longleaf Investments, LLC, a company owned by Mr. Young, provided:
Closing will be as soon as possible. It is acknowledged that James A. Young is a licensed Louisiana real estate broker and is acting for his own account.
Within a month (January 2006) of signing the agreement, Ms. Tolintino informed Mr. Young that she wanted to back out of the deal. In response, Mr. Young, an experienced realtor, gave Ms. Tolintino a deadline to refund the $1,000 and pay the surveying costs (no survey was ever filed in this record). On February 22, 2006, after the deadline had passed, Mr. Young recorded the contract in the Bossier Parish records.
hiThat Ms. Tolintino wanted to back out of the deal should have caused Mr. Young to expeditiously file this action for specific performance. Instead Mr. Young waited until July 2008 to file this action, more than 2½ years after the agreement was executed and recorded. Furthermore, Mr. Young did not file until after the Haynes-ville Shale became big news and large bonuses were being paid in south Bossier Parish for mineral rights. Thus, the value of the properties may have changed significantly. Ms. Tolintino did object that the action for specific performance was not filed within a reasonable time frame.
In Joffrion v. Gumbel, 123 La. 391, 48 So. 1007, 1012 (1909), the Louisiana Supreme Court wrote:
The general rule is that he who seeks performance of a contract for the conveyance of land must show himself ready, desirous, prompt, and eager to perform the contract on his part. Therefore unreasonable delay in doing *844 these acts which are to be done by him will justify and require a denial of relief. No rule respecting the length of .delay which will be fatal to relief can be laid down, for each case must depend on its peculiar circumstances.

It is equally well settled that one who seeks specific performance of such a contract must institute his suit within a reasonable time, and before any material change affecting the interest of the parties has taken place.

These doctrines are applicable to the case before us. It exhibits an excessive and unreasonable delay not only in giving notice of satisfaction with the title and intent to require a conveyance, but also in the application for relief. In the time which has been permitted to elapse a material increase in the value of the subject-matter of the contract has taken place. It would be an unwarrantable exercise of discretionary power to allow one holding a mere [right] to purchase to lie by for so long a time and speculate upon the fluctuating values of urban lots, and, after a substantial increase in their value, to enforce a conveyance in his favor at the original price now inadequate.
[¿Delay in such cases may doubtless be explained, and, in some circumstances, excused, but neither explanation nor excuse can be discovered in this case. (Citations omitted) (Emphasis added).
In Dewenter v. Mott, 27 So.2d 444, 446-
47 (La.App. 1st Cir.1947), the court wrote:
Counsel for defendant next contend that plaintiffs inaction from the day the sale was to be executed until he filed the present suit to enforce performance has given rise to a presumption that the contract had been rescinded. They cite authority to the effect that when both parties to a contract like this fail to take any affirmative action within a reasonable time to default the other there is an inference of rescission. The principle is one familiar to the common law but appears to have received the approval of the Supreme Court. See Joffrion v. Gumbel, 123 La. 391, 48 So. 1007, 1012. As we view it, the matter all relates to what is to be considered a ‘reasonable time’ within which a party must act under the circumstances, and in determining that question the court must necessarily be guided by what are the peculiar facts and circumstances in each case. (Emphasis added).
The majority opinion faults defendant for not showing the fluctuation in property values, but does not fault plaintiff for his delay in bringing this action. As the court in the Dewenter case held, “when both parties to a contract like this fail to take any affirmative action within a reasonable time to default the other there is an inference of rescission.” (Emphasis added). Plaintiff failed to explain his delay, and, as stated in Joffrion, “[djelay in such cases may doubtless be explained, and, in some circumstances, excused, but neither explanation nor excuse can be discovered in this case.” Accordingly, in addition to finding that the petition fails to state a cause of action, I find that there are clearly extant questions of material fact, | (¡particularly respecting the extraordinary length of delay and the possibility of a substantial increase in the value of the property.[1]

. The sale has yet to be completed. The issue of lesion may eventually be raised. Mr. Young was transferring not less than two acres in section 3 for $5,000 an acre and reserving the minerals, while Ms. Tolintino was transferring what she owned including the minerals in section 3 for $400 an acre.